CASE 96—PETITION EQUITY—JUNE 14.

## City of Lexington v. Wilson, &c.

APPEAL FROM FAYETTE CIRCUIT COURT

1. TIME OF ELECTION OF OFFICERS OF TOWNS AND CITIES.—The provision of sec. 160 of the constitution that the term of elective officers of towns and cities other than members of legislative boards "shall be four years" was not intended to apply to officers that might be elected under the then existing charters of towns and cities, but was intended to control the General Assembly when it should come to provide by general laws for the government of towns and cities under the new constitution.

2. SAME.—As no general law for the government of cities of the second class had been passed by the General Assembly at the time of the general election in November, 1893, officers of such cities then elected were elected under the old charters, which, except as to the time of election of city officers, were continued in force by sec. 166 of the constitution until the General Assembly should provide by general laws for the government of towns and cities. Therefore such officers were not entitled to hold for a term of four years or for any definite time, but held subject to the will of the legislature, to be expressed in the act for the government of cities of the second class, which was to be thereafter passed, and the General Assembly having since provided by that act, adopted March 19, 1894, for a general election of city officers in November, 1895, as it was required under the constitution to do, the officers of cities of the second class elected in November, 1893, have no right to complain, or to have a city ordinance passed pursuant to that provision declared void.

BRECKINRIDGE & SHELBY FOR APPELLANT.

So much of the charter of the city of Lexington as was not inconsistent with sec. 167 of the new constitution was continued in force by that instrument, and, therefore, city officers elected in November, 1893, were elected for two years, as provided by the existing charter. Sec. 160 of the constitution was intended to apply only after the municipalities shold be divided into classes. (New constitution, secs. 156-167 inclusive; Holzhauer v. City of Newport, 15 Ky. Law Rep., 188; s. c. 94, Ky., 396; Byrne v. City of Covington, 15 Ky. Law Rep., 33; Aydelotte v. South Louisville, 16 Ky. Law Rep., 166; Beard v. City of Hopkinsville, 15 Ky. Law

Rep., 756; s. c. 95, Ky., 239; Johnson v. Wilson, 15 Ky Law Rep., 853; s. c. 95, Ky., 415.)

J. R. MORTON AND H. MARSHALL BUFORD FOR APPELLEES.

The declaration of sec. 160 of the constitution that the terms of elective officers of towns and cities shall be four years is as fully applicable to the elections held in November, 1893, as to any that can ever be held under the constitution. (Constitution, secs. 166, 167; Holzhauer v. City of Newport, 94 Ky., 396; Byrne v. City of Covington, 15 Ky. Law Rep., 33; Johnson v. Wilson, 95 Ky., 415.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The act for the government of cities of the second class, adopted on March 19, 1894, provides among other things, that "at the regular election in one thousand, eight hundred and ninety-five, and every four years thereafter, there shall be elected by the qualified voters of the city, a mayor, city clerk, city treasurer, city attorney, city solicitor, if there be such officer, and civil' engineer and assessor and city jailer, who shall hold office for a period of four years, and until their successors are elected and qualified, etc." (Sec. 3172 Ky. Stats.)

To carry out the requirements of this act, the general council of the city of Lexington, a city of the second class, passed an ordinance on March 9, 1895, providing for an election of the officers named, to be held on the Tuesday after the first Monday in November, 1895. Thereupon, the appellees, Wilson, Foushee and O'Neil, respectively treasurer, assessor and civil engineer of the city, filed their joint petition, seeking to have the section declared unconstitutional and the ordinance void, upon the ground that they were elected in November, 1893, by the qualified voters of the city for the term of four years and were so entitled to hold their respective offices. The court below sustained their contention.

As these officers were elected by the qualified voters of the city, it is contended by them that the length of their terms is fixed in section 160 of the constitution. After pro-viding generally, for the election of the mayor and chief executives, police judges and members of legislative boards of cities and towns, looking, it is manifest, to such elections therein after the adoption of the general law providing for the classification and organization of such towns and cities, the section further provides: "But other officers of towns and cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide; but when elected by the voters of a town or city, their terms of office shall be four years, and until their successors shall be qualified."

We think it ought to require no argument to show that this section does not relate to the old officers of towns and cities. The General Assembly, when it came to enact laws for the government of towns and cities, was to provide, by general law, for the election or the appointment of officers; and such of them as were required to be elected by the qualified voters, were to hold for four years. The appellees were old officers. No general law had been passed in November, 1893, providing for their election rather than their appointment. They were not elected by the qualified voters in pursuance of any general law providing therefor. They were officers only in virtue of the old charter of the city of Lexington and were elected by the people only because this old charter so required. They bore the official names given them by the old law, and performed such duties only as were prescribed by the old law.

So far as this section is concerned, therefore, it is absolute-ly certain that it had no reference to the terms of office of those holding office under the old charters of the towns and

cities of the Commonwealth. We must, therefore, look
elsewhere for the law fixing the length of the terms of old
officers. Under the head of "Municipalities," from sections
156 to 165, inclusive, of the constitution, a plan of govern-
ment of cities and towns was mapped out for the guidance
of the General Assembly, when it should enact general laws
for these municipal bodies; and by section 166, in order to
prevent confusion, the old city governments were to con-
tinue in force until such time as the General Assembly
might provide laws in conformity to the preceding sections,
but not longer than until January 1, 1895. For the time be-
ing the same offices were to be filled and the same duties were
to be performed as were provided for and prescribed in the
old law. To ascertain what offices were in existence and
what duties were to be performed, and by whom and for how
long, the old charters were to be looked to as furnishing an
absolute guide. The only limitations found anywhere are:
First, the provisions in section 166, terminating the old laws
on January, 1895, which could happen only in the event the
General Assembly failed to provide new laws for the city
governments. Second, the *time* for the expiration of the old
terms was fixed in section 167, "at the general election in No-
vember, 1893," at which time their successors were to be
elected.

Where general laws had been enacted in conformity to the
provisions of the constitution, then the successors to the
old officers were elected in obedience to those provisions,
and their terms of office must expire as provided thereby.
These new officers—new not in the sense of having been
recently elected, but because they were filling new offices
and under a new government—are the officers referred to in
section 167, as those "required" to be elected "by general laws
enacted in conformity to the provisions" of the constitu-

tion.  They are the officers provided for in section 160 of the constitution.  But where no general laws had been enacted the successors of the old officers were new only in the sense of having been newly elected, and they are, in fact, old officers, and fill the same old offices under the old charters.

The reasons which may have caused this interference with them was, perhaps, the fact that August elections had been abolished, and moreover, odd years were those only in which they could be elected in pursuance to other provisions of the constitution.  At any rate, the provision was a plain one and in no way interfered with the general plan provided for in section 166 of continuing the old governments under their old offices *until such time as the General Assembly might provide by the general laws for the new governments*.  They were to hold their old offices, therefore, until such time as the General Assembly might provide otherwise.  Their tenure was of uncertain duration, because the General Assembly had, until January, 1895, "within which to provide the new offices." These old officers thus succeeding old officers in November, 1893, are the officers referred to in section 167, as those required to be elected "by this constitution," in that by section 166 the old offices were continued and by section 167 their election in November, 1893, was expressly enjoined.  Upon their election in 1893 they had in front of them two events, either of which must terminate their official existence.  One was the arrival of the first of January, 1895, without the passage of new laws for the government of towns and cities.  The other was the passage of those laws by the General Assembly, by which the new order of things supplanted the old.  There was, we may add, another provision which affected their holding.  Their successors under the new laws could only be elected "at the general election in November," and then "only in odd years."

It is fair to presume that the members of the convention anticipated that while the new laws for the various towns and cities, might, in the main, be enacted prior to the election in November, 1893, this might not happen in all cases. Upon the supposition that such laws would be so enacted in most instances prior to that election, the starting-point for elections in odd years was fixed at the November election, 1893, but the following year was also given the General Assembly within which to enact such laws, and the succeeding election must then follow in the next November, coming in an odd year.

Precisely what was anticipated did, in fact, happen, and the General Assembly did just what, in our opinion, it was required to do under the constitution when it provided, in the act of March 19, 1894, for the election of the officers of towns and cities of the second class in November, 1895.

Under the contention of the appellees, old officers, not necessarily to be continued in existence under the new order of things, are, nevertheless, to be continued in office under a section of the constitution (160) providing not for the old, but for the new offices. And that too, when by applying that section to the old officers, they will hold until 1897, two years longer than the city organizations of which they are a part could in any event last.

If no new laws had been enacted, confessedly, the old system must have terminated in January, 1895, under the express provisions of section 166 of the constitution. But singularly enough, as the new laws were passed before January, 1895, the old system, for the destruction of which these new laws were enacted, is revived under the contention of the appellees, and the old officers live until 1897. The measure adopted to kill off the old system is made the instrumentality of its continuance, in a material and important .

particular, even beyond the plain limitations of the consti-
tution. Thus "the stone which the builders refused is be-
come the head stone of the corner."

Judgment reversed with directions to enter judgment
upholding the validity of the ordinance.