CASE 24—TWO SUITS—ONE BY J. M. GILBERT AND ONE BY JAMES F.
CROW AGAINST THE CITY OF PADUCAH AND OTHERS, TO RESTRAIN
THE CITY FROM INTERFERING WITH THEM IN THEIR OFFICIAL DU-
TIES AND COMPENSATION.    BOTH SUITS HEARD TOGETHER.—
MARCH 18.

# Gilbert v. City of Paducah, &c. Crow v. Same.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL.    REVERSED.

CITIES—CHANGE FROM THIRD TO SECOND CLASS—STATUTES—RIGHTS
OF OFFICERS' DUTIES AND COMPENSATION.

Held:  1. Though so much of Kentucky Statutes, section 3264, rela-
tive to transfer of cities of the third class to another class, as
provides for transfer by the circuit courts, is void, as violating
Const., section 156, giving the power of transfer to the Leg-
islature alone, yet not only the part providing means
for taking the census is valid, so that when the popula-
tion is ascertained, pursuant thereto, the Legislature may there-
on make a transfer, as "in pursuance of a law previously en-
acted, and providing therefor," as required by said section
156, but the part providing for the future government of the
transferred city and the rights of existing officers is also valid.

2. The provision of Const., section 161, that the compensation of
no municipal officer shall be changed after his election or during
his term of office, is to be read with section 156, giving the
power to transfer a city from one class to another, and does not
impair the power to abolish the municipality or the office.

3. The provision of Kentucky Statutes, section 3264, that the trans-
fer of a city of the third class to another class shall not in
any wise affect the rights and duties of any officer thereof, is to
be read in connection with section 3172, being part of the act
for government of cities of the second class; so the officers of a
city coming into the second class, like those of a city originally
in the class, are entitled to hold their offices and receive the
same compensation as before till the induction into the office
of the officers elected at the next regular election for cities of the
second class.

4. The marshal of a city of the third class coming into the second class will be treated as chief of police till the next election, the offices including the same duties.

BLOOMFIELD & CRICE, ATTORNEYS FOR APPELLANT, GILBERT.

The appellant, Gilbert, was elected city attorney of the city of Paducah at the November election, 1901, said city then being a city of the third class. Under the ordinances and laws governing said city at that time, he was entitled to thirty per cent. of all fines and forfeitures for his services as city attorney. This compensation amounted to from $2,500 to $3,000 per year, and he was elected for a term of four years.

By an act of the General Assembly at its regular session in 1892, the city of Paducah was transferred from the third class to the second class cities.

By ordinance of the general council of said city newly organized in December, 1902, the compensation of the city attorney was fixed at a salary of $1,200 per annum, instead of the thirty per cent. commission.

The city was enforcing and threatening to continue to enforce this ordinance which the appellant refused to accept, insisting that he was entitled to the thirty per cent. during the whole of the term of four years for which he was elected, and the city and officers denying this, he instituted this suit praying that the act of the General Assembly in attempting to transfer Paducah from the third to the second class, should be adjudged unconstitutional and invalid, and that said ordinance be also held to be null and void, and that said city be enjoined from enforcing said ordinance.

Issue was joined upon this suit, and upon hearing, the lower court adjudged that the transfer was valid, that Paducah was a second class city, and that the council had a right, by ordinance, to change Gilbert's compensation during his term, and dismissed his petition, from which judgment he appeals.

The appellant contends:

1. That the act of the General Assembly striking Paducah from the list of cities of the third class and adding it to the list of cities of the second class, is unconstitutional and void, and does not transfer Paducah, in law, from the third to the second class cities.

2. That if it is held that Paducah has been transferred legally to the second class cities, the act transferring same does not abolish or shorten the term of his office.

3. That if Paducah is held to be a second class city, even then

the general council has no power or authority to change by ordinance appellant's compensation during his term of office, especially while he is continuing to perform the duties of the office.

We do not contend that the General Assembly has no power to change the assignment of cities, but we insist that it has no power to make such change until it has previously enacted a law providing for such transfer, as provided in section 156 of the Constitution.

But if it be held by this court that Paducah has been legally transferred the act making the transfer does not abolish appellant's office or shorten his term. The act does not refer to any of the city officers or make any provision as to how long they are to continue in office. Nor does it provide that their offices are abolished, nor provide as to how or when their successors are to be selected.

Section 160 of the Constitution provides, that the General Assembly may by a general law provide for the election of city officers. *But when elected by the votes of a town or city, their term of office shall be four years,* and section 161 provides that the compensation of any city, county, town or municipal officer, shall not be changed after his election or appointment or during his term of office.

## AUTHORITIES CITED.

Constitution, secs. 156, 152, 160, 161, 166, 167, 235; Kentucky Statutes, secs. 2740, 3049, 3064, 3172, 3264, 3661, 3662, 3369, 3373, 3461, 3049; Session Acts of 1902, p. 115; Jernigan v. City Madisonville, 19 R., 1412; Com. by Atty. Gen. v. Addams, clerk, 95 Ky., 589; Standeford v. Wingate, &c., 2 Duv. 440; S. C. & C. Street Railway Co. v. Berry, mayor, 93 Ky., 43.

REED & BERRY, FOR APPELLANT, CROW.

These cases involving the same questions, virtually, a full statement of the case having been made in the brief of Bloomfield & Crice, attorneys, representing appellant, Gilbert, we refrain from burdening the court with a reiteration in the way of a statement.

1. The contention of appellant, Crowe, is, that the city of Paducah has not been legally transferred to the cities of the second class.

2. Even if it be held that said city has been transferred by the act of March 21, 1902, then we contend that the office of marshal, to which appellant, Crow, was elected in November,

1901, for four years, has not been abolished and will not be and can not be until his term expires; and he is legally entitled to fill out his term.

(The argument for appellant, Crow being subtantially in the same line as that made in the brief of attorneys, Bloomfield & Crice, the reporter deems it unnecessary to reiterate it.)

REPORTER.

W. S. PRYOR, ATTORNEY FOR BOTH APPELLANTS.

The act of transfer is as follows:

"An act to amend an act, entitled 'An act to assign cities and towns of this Commonwealth to the classes to which they belong.'

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"That section 1 of chapter 95 of the Session Acts, 1891, '92, '93, be amended by striking out the words 'Paducah, McCracken county,' from the list of cities of the third class, and by adding the words 'Paducah, McCracken county,' to the list of cities of the second class, so that said section, when thus amended, will read as follows:" * * *

And then, in the enumeration, proceeds to classify Paducah as a city of the second class.

This is all the provision in regard to the transfer of the city from the one class to the other, except to enumerate the cities and towns of the various classes, six in number, with an emergency clause declaring that the amended act should at once take effect. This act was approved March 21, 1902.

So we find a city of the second class in March, 1902, without any official, left to be administered by those elected as officials of a city of the third class, and no provisions whatever made as to the manner of transfer, the act simply announcing that Paducah is classified with cities of the second class.

The contention, however, is, and such is the opinion of the learned chancellor below, that when the six charters for cities and towns had been enacted, and the same classified and assigned, nothing more was required than for the Legislature to say by its enactment that a city of the one class was thereby transferred to a class of a higher or lower degree, for the reason that the charter of the class to which it is transferred "is an all-sufficient law for its organization and government."

Section 156 of the Constitution provides:

"The General Assembly shall assign the cities and towns of the Commonwealth to the class to which they respectively belong, and change assignments made as the population of said

cities and towns may increase or decrease; * *. * but no
city or town shall be transferred from one class to another, ex-
cept in pursuance of a law previously enacted and providing
therefor."

It is argued that the charter of Paducah as a city of the
third class ceased on the 21st of March, 1902, and that the
charter of cities of the second class has been the organic law
of its government since that time.   These appellants allege
that the mayor, D. A. Yeiser, elected at the same time these
appellants were, and for the same term, has assumed the du-
ties and is now exercising all the powers of a mayor of a city
of the second class; that he has appointed a board of aldermen,
a board unknown to cities of the third class, and they have
qualified, and are now exercising the powers conferred by the
charter of cities of the second class; that he has appointed James
Collins chief of police, and he has qualified and entered upon
the discharge of his duties; and that he has appointed a board
of police and fire commissioners, all of which offices pertain
to cities of the second class, and not to cities of the third class.
The city council has changed the compensation of the city
attorney, and his salary has been regulated by the provisions
found in the charter of cities of the second class.   In other
words, the whole machinery of the city government is con-
ducted as required by the charter of cities of the second class,
and these appellants deprived, the one of his compensation and
the other of his office, without right or authority.   Crow's
right to the office of marshal is taken from him, as well as his
compensation, the charter under which the mayor is presum-
ing to act ignoring any such official.  .

If the defendant, Yeiser, is mayor of a city of the second
class, he is made so by mere implication, not by reason of any
legislative enactment, or by a vote of the people.   The city
over which he now presides as mayor is of a higher class, with
greater duties to perform, and larger powers, and higher re-
sponsibilities to assume; when, under his election as mayor of
a city of the third class, his duties were specifically defined,
and from which no such power as he is now exercising is de-
rived.

The question again arises:   In what manner does a mayor,
elected as such for a city of one class, become mayor of a city
of another class?   There is no such constitutional provision;
there is no such legislative enactment.   He can not be a *de-
facto* officer.   He is not acting under any commission that is in-
valid.   He was elected mayor by the popular vote of a city of
the third class, and while he might have been empowered by

legislative provision to assume and discharge the duties of mayor of a city of a higher class, we find an entire omission to have enacted any law on the subject.

The framers of the Constitution never designed in forming that instrument to have any of its cities exist as such without any one to conduct its government, and, therefore, wisely provided the manner in which the Legislature should frame laws to meet any complication that they saw might and would arise in municipal government. But it is now maintained that the mayor of the city of Paducah, in leaving his office as mayor of a city of the third class, could enter the door of a city of the second class, carrying with him all the officers from the city of the third class that were recognized as officials in the city of the second class, and leaving those officers behind him who were not the same kind of officials as belonged to the class of the city he was about to enter. In this case, the mayor leaves the marshal behind him, appoints in his stead a chief of police, and selects his board of aldermen, all without any legislation but such as is said might have been had under a perfect law, and this court is asked to sustain such a construction of the constitutional provision in question.

The legislative enactment, under which this transfer is made, is silent as to the manner in which it shall be done, and the mayor of this city of the third class is left to determine what is necessary to be done in the absence of this legislation; and he, therefore, determines that he will appoint a board of aldermen; that he will appoint a chief of police; that he will appoint a board of police and fire commissioners; declare that the office of marshal is unknown to cities of the second class, and that the city attorney must look to the compensation fixed by the charter of cities of the second class, and not to the compensation given him under his election.

The exercise of such powers can not arise by implication, and unless expressly conferred by law, as the Constitution requires, their exercise is in direct violation of section 156 of the Constitution.

## LEGISLATIVE CONSTRUCTION.

The legislative construction of section 156 of the Constitution is found in sections 3264, 3661 and 3662 of the Kentucky Statutes. In those sections the Legislature attempted to enact a general law as required by section 156 of the Constitution, and to confer the power on the circuit courts of transferring the cities and towns of the State from the one class to the other, but the court of appeals held, in the case of Jernigan

v. The City of Madisonville, 19 Ky. Law Rep., 412, that the act
giving the courts jurisdiction was unconstitutional, and that
the legislative department of the government must alone de-
termine how and when this transfer from the one class to the
other should be made.   While section 3264 is exactly similar
to sections 3661, 3662, it has never been held unconstitutional,
still it must be so regarded, as there is no difference in the
statutes, but other parts of section 3264 are constitutional,
and in this section it is expressly provided that in this trans-
fer "the powers, rights and duties, or obligations of the city,
shall in nowise be affected by the transfer, or any officer or
employe thereof."

If the entire act is to be considered as inoperative, it shows
the legislative intent, and a purpose to provide a general law
on the subject.  The law maker was attempting to follow the
plain provisions of the Constitution by the enactment of a law
that would secure the rights of all, and remove all confusion
that otherwise must arise in transferring a municipality from
one organic law into another.  This general law provided that
the transfer was in nowise to affect those in office.

The courts declined to exercise the powers conferred.  The
Legislature has passed no law on the subject, and it is now
contended that the mayor of a third class city can leave his
municipal government, take charge of another and higher
class, create boards of aldermen by appointment, create police
and fire commissioners, make a chief of police, and what ma-
chinery in his third class city that he deems unnecessary in
his new government he leaves at home.  It is manifest that
both of the appellants are still in office, and entitled to the
emoluments of each until the change is made by virtue of
some general law, to be hereafter enacted.  We ask a reversal
in each case.

J. M. WORTEN, ATTORNEY FOR APPELLEE.

These two actions involving practically the same questions,
were, by agreement heard together in the lower court and are
heard together on appeal.

The contention of the appellees, is that the city, by the act
of the Legislature of March 21, 1902, was transferred from a
third class city to a second class city, and that by such trans-
fer the office of city marshal was abolished absolutely, inas-
much as there is no such office provided for by the charter
for second class cities; and we contend, so far as appellant,
Gilbert is concerned, that his office of prosecuting attorney
was also abolished, and his tenure determined, but inasmuch as

there is an office provided for in the charter of second class cities which corresponds with the one he held, it was decided that he might perform the duties of the new office styled in the second class charter, city attorney, until a city attorney could be elected at the November election, 1903; but appellees claim the right to and did fix the salary of the city attorney at less than he had heretofore been receiving, of which he complains in this suit.

The main question is whether or not the city was properly transferred.

We claim that under section 156 of the Constitution, and section 2740 of the Kentucky Statutes, the act of March 21, 1902, is clearly legal.

We think that section 3264, Kentucky Statutes, is clearly within the purview of the Constitution as a previously enacted law, and his section is a part of the charter of third class cities, and this court held that it was constitutional except in so far as the Legislature undertook to delegate to the circuit courts power to transfer cities from one class to another.

Under the charter of third class cities, the prosecuting attorney receives his compensation by commissions on fines and forfeitures, but under second class charter, he is allowed a fixed salary and no other compensation and all the fines go to the city. In support of our contention that the transfer abolished the offices of city marshal and prosecuting attorney, and terminated their terms respectively, we quote the following authorities:

Kentucky Statutes, secs. 3349, 3351, 3369, 3373, 3064, 3172; Duncan v. Simrall, 19 R., 1672; Throop on Public Officers, secs. 19, 20, 304; (Kaufman v. Stone, 25 Ark., 336), 307, 315; Beach on Public Corporations, vol. 1, sec. 82, (McGrath v. Chicago, 24 Ill. App., 19), Alexander v. McKenzie, 2 S. C., 81; Crook v. People, 106 Ill., 237; People v. Henshaw, 76 Cal., 436; Beach on Pub. Corp., vol. 1, sec. 160; Moser v. Shamleffer, 39 Kan., 635; Ritchie v. City of South Topeka, 38 Kan., 368; Dillon's Mun. Corp., vol. 1, sec. 231; Am. & Eng. Ency. of Law 2d ed., vol. 20, p. 1238; Crook v. People, 106 Ill., 237; Watervliet v. Colonie, 27 N. Y. App. Div., 394; Jones County Clerk v. Wilshire, 17 Rep., 989; Johnson v. Wilson, 15 Rep., 852; Barrett v. City of Falmouth, 22 Rep., 667; City of Lexington v. Wilson, &c., 17 Rep., 436; Board of Council City of Frankfort, &c. v. Brauner, &c., 18 Rep., 684; Campbell County v. Trapp, 23 Rep., 2356, citing Johnson, &c. v. Gunn, &c., 20 Rep., 1475; Williams v. City of Newport, 12 Bush, 438; Wheatley v. City of Coving-

ton, 11 Bush, 18; The People v. Geo. W. Brown, &c., 83 Ill., 95; McGrath v. Chicago, 24 Ill., 19.

On the question of the right of the council to fix the salaries of the city officers, and on the question of *de facto* officers, we submit the following authorities: Kentucky Statutes, sec. 3064; City of Louisville v. Wilson, &c., 18 Rep., 427; Marion County Fiscal Court v. Kelly, 22 Rep., 174.

Right of the court to inquire into the proceedings of the Legislature; Taylor v. Beckham, 21 Rep., 1745; Lafferty v. Huffman, &c., 18 Rep., 17.

We believe that when this case is thoroughly understood by the court, it will not hesitate to affirm the judgment of the lower court.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

By the act of September 30, 1892 (see Ky. St., section 2740), Paducah was assigned to cities of the third class. At the regular election in November, 1901, it elected various city officers, as provided by the laws governing third class cities. At this election appellant Gilbert was elected prosecuting attorney of the police court, and appellant Crow was elected marshal, each for a term of four years. Kentucky Statutes, sections 3369, 3338. Each of them qualified and entered upon the discharge of his duties. By section 3373, Kentucky Statutes, the prosecuting attorney of the police court receives as his compensation 30 per cent. of all fines and forfeitures recovered in the court. By section 3349, the marshal receives such compensation in the way of salary, commissions, and fees as are prescribed in the statute or by ordinance, which shall not be changed during his term of office. While they were discharging their duties, the General Assembly, by an act approved March 21, 1902, struck out Paducah from the list of cities of the third class, and added it to the list of cities of the second class; but the act is silent as to how the transfer is to take effect, or what shall become of the officers of the city elected and holding under the charter as a third-class

city, nothing further being provided than that the city shall be transferred from the third class to the second class. Acts 1902, p. 115. By the charter of the second-class cities, the office of city attorney is created, corresponding to the office of prosecuting attorney of the police court, and he is paid such a salary as the general council shall deem proper. Kentucky Statutes, sections 3165, 3167. After the transfer of the city to the second class, the general council passed an ordinance fixing appellant Gilbert's salary at $100 a month. This he declined to receive. There is no such office as marshal in second-class cities. The duties of marshal in the third-class cities are imposed upon the chief of police in second-class cities. Kentucky Statutes, section 3168. A chief of police was appointed, and appellant Crow was dropped. Kentucky Statutes, section 3138. Appellants, Gilbert and Crow, filed these suits to restrain the city from interfering with them in the discharge of their official duties, or depriving them of the compensation attached thereto, during the term for which they were elected. Their petitions were dismissed, and they have appealed.

Section 156 of the Constitution, among other things, provides: "The General Assembly shall assign the cities and towns of the Commonwealth to the classes to which they respectively belong and change assignments made as the population of said cities and towns may increase or decrease, and in the absence of other satisfactory information as to their population, shall be governed by the last preceding federal census in so doing; but no city or town shall be transferred from one class to another, except in pursuance of a law previously enacted and providing therefor." It is insisted that the act of March 21, 1902, is invalid, under this provision, for the reason that no law had been previously enacted providing for the transfer of cities from

one class to another. The General Assembly in the act of June 14, 1893, made a general law providing for the transfer of cities of the third class. Kentucky Statutes, section 3264. It is in these words: "When the population of any city of this class, as ascertained by the last federal census, or by a census taken pursuant to an ordinance of said city, authorizing it to be placed in a class other than that in which it is, the council of such city may enact an ordinance, setting forth the population of the city, and how ascertained, the class it is then in, and the class which it is entitled to be in, and may file a petition in the circuit clerk's office of the county, declaring the facts with reference to its population and the class it desires to become a member of and such other facts as may be thought proper, and shall file with such petition a copy of the ordinance, and shall cause notice of the filing of such petition; and the object thereof, to be published in at least six issues of a daily or two issues of a weekly paper, of general circulation, published in the city, or in the county, if none be published in the city; or if no paper be published in the city or county, by notices posted up for at least ten days, at four public places in said city. On the second day of the next regular term of the court, the court shall, if the proper notice has been given, or publication made, and no defense is interposed, enter a judgment assigning such city to the class to which it belongs, as appears from the petition and exhibits, and thereafter such city shall be governed by and under the general laws relating to the class to which it has been assigned, but the transfer from one class to another shall not in any wise impair or affect any ordinance or by-law theretofore enacted by such city, unless the same is in conflict with the general laws relating to cities of the class to which it has been assigned, and to such extent only shall

any ordinance or by-law be repealed by the transfer, nor shall the powers, rights, duties or obligations of the city be in any wise affected by the transfer or any officer or employe thereof, or any debtor or creditor of the city. Defense may be made to the petition by any inhabitant of the city; and if defense is made the court shall hear and determine the same, and render a judgment transferring or refusing to transfer the city to another class, as may seem proper. The pleadings and practice shall be the same as in equity cases, except as herein provided; but if the court shall be satisfied that the population of the city entitles it to be transferred to another class, it shall so adjudge if the proper notice or publication has been made; and no appeal shall lie from the judgment."

Similar provisions were attempted to be made as to other cities and towns by sections 3661, 3662; but so much of these sections as authorizes the court to assign or transfer a town or city from one class to another was held unconstitutional in Jernigan v. City of Madisonville, 102 Ky., 313, 19 R., 1412, 43 S. W., 448. Yet in that case the court said: "So much of said sections, however, as provide means for taking the census or determining the population of any such city or town are constitutional and valid, and when the population of a town is ascertained, pursuant to the provisions of said sections, the Legislature will be authorized to make the proper transfer of such town or city." The same rule must necessarily be applied to section 3264. A census was taken by the city of Paducah, showing that it had the required population, and an ordinance of the city was then passed, setting forth the population of the city, and how ascertained, the class it was in, and the class in which it was entitled to be; and, these facts being laid before the Legislature, the act in question was passed. We

are of opinion therefore, that under the rule heretofore
laid down by this court, from which we are unwilling to
depart, the act of March 21, 1902, was not invalid, because
no previous law had been passed providing for such trans-
fer. For if we reject all that part of the section relating
to the judicial proceedings for the transfer, as unconstitu-
tional, we have left not only that relating to the census,
but the following: "And thereafter such city shall be gov-
erned by and under the general laws relating to the class
to which it has been assigned, but the transfer from one
class to another shall not in any wise impair or affect any
ordinance or by-law theretofore enacted by such city, un-
less the same is in conflict with the general laws relating to
cities of the class to which it has been assigned and to such
extent only shall any ordinance or by-law be repealed by
the transfer, nor shall the powers, rights, duties, or obliga-
tions of the city be in any wise affected by the transfer of
any officer or employe thereof or any debtor or creditor of
the city." Under the principles laid down in the case re-
ferred to, this part of the section must be held in force,
no less than that part of it relating to the taking of the
census. It is, no doubt, true that if a city is transferred
from one class to another, without any provision saving the
rights of the officers, they would have only such rights as
are conferred by the law governing the city in the class to
which it is assigned, as they take their offices subject to the
right of the Legislature to transfer the city from one class
to another as provided in the Constitution. If the Legis-
lature abolishes a municipal corporation, the rights of its
officers cease with its existence, for they take their offices
subject to the power vested in the Legislature to abolish
them, when such power exists. Although it is provided
in section 161 of the Constitution that the compensation of

no municipal officer shall be changed after his election or during his term of office, this section must be read in connection with section 156, and does not impair the power of the Legislature to abolish the municipality or abolish the office by assigning the city to a different class, which is, in effect, to create a new municipal entity. A city of the second class is governed by different officers and with different powers from a city of the third class. Appellants, therefore, by the transfer of the city from one class to the other were legislated out of office, except so far as their rights were saved by the provision quoted from section 3264, Kentucky Statutes. But that section must be read in connection with the other provisions of the act for the government of cities of the second class. By the first section of that act (Ky. Stat., section 3038) the cities of Covington, Newport and Lexington are declared to be cities of the second class, "and the inhabitants thereof and of such other cities as may hereafter be declared cities of the second class respectively are created and continued bodies corporate and politic within their respective limits." By section 3172 it is provided as follows: "All offices created by laws in force prior to this act taking effect, not herein expressly provided for, shall be, and they are hereby abolished upon the expiration of the terms for which present incumbents may have been respectively elected; but the general council shall have the power, by ordinance, to recreate such of said offices, and to prescribe the terms and duties thereof, as may be needed to effect the corporate purposes. At the regular election in one thousand eight hundred and ninety-five, and every four years thereafter, there shall be elected by the qualified voters of the city a mayor, city clerk, city treasurer, city attorney, city solicitor, if there be such officer, and civil engineer and assessor and

city jailer, who shall hold office for a period of four years, and until their successors are elected and qualified; also members of the board of aldermen and members of the board of councilmen, who shall hold office as hereinafter provided, and until their successors are elected and qualified. At the general election in one thousand eight hundred and ninety-seven, and every four years thereafter, there shall be elected a judge of the police court. All officers elected under this act shall assume the duties of their several offices on the first Monday in January succeeding their election." In the cities of the second class, officers were elected in November, 1893, for four years. Subsequently the act for the government of cities of the second class was passed, on March 19, 1894; and it was held that the officers elected in 1893 for four years must give way to those elected under the act at the November election, 1895. In other words, the holding over of the old officers was confined to such a period as was necessary to set in motion the machinery of the municipal government under that act, and it was held that after the regular election of officers under the new act, and they entered upon the discharge of their duties pursuant thereto, the old officers must give way. This ruling was made upon the idea that neither the Constitution nor the act contemplated that the city should be left without officers for any time, or that it should have two sets of officers at the same time. Lexington v. Wilson, 97 Ky., 707, 17 R., 435, 31 S. W., 471; Rhinock v. Evans (17 R., 439), 31 S. W., 473; Newport v. Brown (17 R., 439), 31 S. W., 473; Duncan v. Simrall (19 R., 1672), 44 S. W., 116.

We are therefore of opinion that, construing the acts together, as must be done, the same rule must be followed now in the case of a city coming into the second class as was applied to the cities originally in that class when the

act took effect, and that appellants are entitled to discharge the duties of their offices until the induction into office of the city officers elected in November, 1903, and that in the meantime their powers, rights, and duties are in no wise affected by the transfer of the city from the third to the second class. They are therefore entitled to discharge their duties until then, and to receive the same compensation as before the transfer was made. In the meantime the city shall be governed by and under the general laws relating to the class to which it has been assigned—not to affect the powers, rights, duties or obligations of the city, or any officer or employe or debtor or creditor thereof. Second-class cities have provided for them offices unknown to cities of the third class. These may be filled. For example, a board of aldermen, police and fire commissioners are provided for for second-class cities, but not for those of the third class. The offices of marshal of third-class cities and chief of police of second-class cities include the same duties. The marshal in this case will be treated as chief of police until the appointment of a chief of police is made by the new regime after the election in November, 1903, unless a vacancy sooner occurs.

Judgment reversed, and cause remanded for further proceedings consistent herewith.