**John GERARD, Appellant,**

v.

**Paul JUDD et al., Appellee.**

Court of Appeals of Kentucky.

Dec. 18, 1959.

Rehearing Denied Feb. 12, 1960.

Ben B. Fowler, Frankfort, for appellant.

William A. Young, John Hopkins, Max M. Smith, Ray Holbrook, Frankfort, for appellee.

MOREMEN, Judge.

This declaratory judgment action seeks to determine whether appellant, John Gerard, who was elected mayor of Frankfort in the year of 1957 and who assumed office on the first Monday in January 1958, is entitled to retain that office until a corresponding day in 1962, or whether his term expires on the first Monday in January 1960, which would make it necessary to hold an election this fall.

The appellees have all filed petitions seeking to have their names placed on the ballot for the office of mayor at the November election in 1959.

The Franklin Circuit Court, by judgment, declared it was required that the City of Frankfort hold an election on the first Tuesday in November 1959, for the purpose of electing a mayor. Hence this appeal by the Honorable John Gerard.

The controversy arose from the following facts: Frankfort was a city of the third class at the time of the adoption of our present Constitution (and enabling legislation), and remained so until the General Assembly of 1956 changed its classification to that of a city of the second class. The effective date of the Act was May 18, 1956,

and, on that date, the Honorable Robert Yount was mayor. He had been elected in 1953, and had taken office in December 1953. Hence, he was entitled (KRS 81.020) to hold his office under the new city classification "until the term for which he was elected has expired and until his successor has been elected and qualified." His successor, therefore, was eligible for selection at an election which was held in 1957. Meanwhile, in 1956, the voters of Frankfort adopted the city manager form of government. Subsection (1) of KRS 89.430 reads: "In cities of the second and fourth classes, at the first regular election at which the mayor or police judge of the city is elected after the election at which the city manager form of government was adopted, there shall be elected by the qualified voters of the city four commissioners and a mayor, or police judge, as the case may be." Subsection (3) states that the mayor shall serve for a term of 4 years, beginning on the first Monday in January following his election. Therefore, the date on which Yount's successor properly should be elected coincided with the date of the first regular election after the city manager form of government was adopted and, in November 1957, appellant Gerard was elected mayor and took office in January 1958.

As we indicated above, our task is to determine the length of time Mayor Gerard is entitled to continue his office.

Appellant, as a basis for reversal of the Circuit Court's judgment, points to Section 160 of the Constitution, which deals with the elections and terms of office of all city officers in this state, and particularly to those parts which read:

"The terms of office of Mayors or Chief Executives and Police Judges shall be four years, and until their successors shall be qualified, and of members of legislative boards, two years."

and:

" * * * but when elected by the voters of a town or city, their terms

of office shall be four years, and until their successors shall be qualified."

Appellant argues that this basic law applies to the elected officers of all cities and, since appellant was elected at a regular November election after the expiration of the required four-year term of his predecessor, he is entitled to the term mandatorily fixed by the Constitution.

This Court on several occasions has defined the phrase "term of office." In Schardein v. Harrison, 230 Ky. 1, 18 S.W.2d 316; McGinnis v. Cossar, 230 Ky. 213, 18 S.W.2d 988; and Mullins v. Jones, 290 Ky. 796, 162 S.W.2d 761, 763, this language was found to be acceptable:

" 'Term' is thus identified and defined as a certain and fixed period of four years. It commences when the mayor is elected and inducted into office and ends at the end of the four years for which he was elected. One or several persons may discharge the duties of the office during this period, but the term is not divided into smaller terms by the number of persons who may fill the office. It remains one and indivisible, and term follows term in successive cycles of four years each. Nor does it die with the incumbent. On the contrary, if the incumbent or the one elected to the office shall resign, refuse to qualify, or be impeached or removed from office, the term remains unbroken until the recurring election for that office."

It may be noted that the above quotation addressed the problem from a viewpoint obtained after a person began a term at the regular time and the incumbent, for some reason (except refusal to qualify) did not finish it. Here, we must decide whether a regular term may be broken by the fact that an incumbent who was entitled to hold his office, after the city changed classification (KRS 81.020), thereby consumed approximately two years of that term by reason of the holdover.

If, as we have often held, one or more persons may discharge the duties of the office during the term, it does not matter whether the various persons who occupy the office do so at the beginning or end of the term. For example, if a person at the beginning of a term of office is elected but fails or refuses to qualify (as did Sterling B. Toney on being elected to this Court) it seems to us that this fact would not lengthen the term as it existed before the refusal, any more than if such a person had qualified and then died in office.

It remains for us, therefore, to determine when the first indivisible term for cities of the second class begins so that we may compute the "successive cycles of four years each."

Our present Constitution was adopted on September 28, 1891. Sections 156 through 167 deal with the government of cities. In them are laid down rather strict rules for guidance of the General Assembly, but most of the sections are not self executing.

Section 166 provides, in effect, for the expiration of the charters of the existing cities but continues them in force until the General Assembly shall act, and contains this specific mandate:

"* * * the General Assembly shall provide by general laws for the government of towns and cities, and the officers and courts thereof; but not longer than four years from and after the first day of January, one thousand eight hundred and ninety-one, within which time the General Assembly shall provide by general laws for the government of towns and cities, and the officers and courts thereof, as provided in this Constitution."

We found in City of Lexington v. Wilson, 97 Ky. 707, 31 S.W. 471, 473, the mandate was obeyed, saying:

"Precisely what was anticipated did in fact happen, and the general assembly did just what * * * it was required to do under the constitution,

when it provided, in the Act of March 19, 1894, for the election of the officers of towns and cities of the second class in November, 1895."

Article V, Section I of that Act (KRS 84.280) provided that the chief executive officer of the city shall be the mayor and "he shall be elected for a term of four years by the qualified voters of the city." Article VII, Section I (KRS 84.350) provided, "At the regular election in one thousand eight hundred and ninety-five, and every four years thereafter, there shall be elected by the qualified voters of the city a mayor * * *, who shall hold office for a period of four years, and until their successors are elected and qualified." Acts 1894, c. 100. (In the revised statutes the words "a period of" were omitted, but we believe this is of no significance since the length of the term is set in KRS 84.280.)

The first election for the first term of the office of mayor was held in 1895. The term of office for which the election had been held began, under the Act, on the first Monday in January succeeding the election. Thus the successive cycles of four years each were born for cities of the second class, and the beginning and termination date of each term was established.

By arithmetical progression from 1895 and by using the constant term of four years, we find that in recent years and in the near future election years for cities of the second class are and will be: 1955, 1959, and 1963. The ensuing terms began or will begin in: 1956, 1960, and 1964.

When we return to the facts in the case under consideration, we find that in 1953, while Frankfort was a city of the third class, Robert Yount was elected mayor to serve from the first Monday in December 1953, to the first Monday in December 1957, and until his successor qualified. By virtue of KRS 81.020, his term of office was not affected by the change of classification of Frankfort in 1956. He had the right to serve his term, even if it overlapped and consumed almost two years of the then ex-

isting term for a mayor of a city of the second class. So, after the date of change, the elected mayor of a third class city rightfully preempted a portion of the term of an officer of a city of the second class. After his preemption of about two years of the term of a mayor of a second class city, only two years remained. It was for this remnant that Mayor Gerard was elected in 1957.

This position is supported by ample authority. The opinions do not discuss as a rule the crystallization of the term at its inception, but even more significantly there is an application of that conception to the facts.

In Fullerton v. Mann, 214 Ky. 764, 284 S.W. 113, Fullerton was elected in November 1921 to the office of prosecuting attorney for Ashland, a city of the third class, for a term of four years. In 1924, Ashland advanced to the second class. Fullerton, under the statute, had the right to hold over until the expiration of his term in 1925. The court recognized that the "term" for a city of the second class was established at the time of its origin, saying:

"Beginning with 1895, and counting four-year periods, the regular election for city attorney in a city of the second class like Ashland would have taken place in November, 1923, while the election of a prosecuting attorney in a city of the third class took place in November, 1925."

Fullerton claimed that the city had no right to hold an election in 1925, because he was entitled to hold office until his successor was elected in the 1927 election for second class cities, under his constitutional right to hold office until his successor shall qualify.

The Court held:

"Inasmuch as the appellant, Fullerton's term of office as city attorney expired at the end of last year, and 1925 was not the regular year in which to elect a city attorney in a city of the

second class, and there would occur a vacancy unless filled by election or appointment, it was the duty of the city to cause an election to be held at the regular November election, 1925, to fill out the unexpired term, ending with the year 1927."

Thus it was accepted that the impingement of Fullerton's term consumed a portion of the term of office of the second class city and that the city attorney who was elected at the 1925 election (Mann) would serve only until the regular election for cities of the second class to be held in 1927. This holding also points up the fact that a vacancy may exist in the first part of a "term" as well as in the last part.

In Warren v. Blatt, 280 Ky. 185, 132 S. W.2d 933, Blatt was elected at the November election, 1937, as a member of the board of trustees of a sixth class city. In January 1938, he was elected chairman. In May 1938, the city advanced to the fifth class, and thereafter he acted as mayor. He had been elected for a two year term. He claimed the right to hold office until the next regular election for mayors of fifth class cities which would occur in 1941. This Court held that he could hold only until his two-year term expired in January 1940, and a vacancy would exist thereafter which should be filled according to law. This vacancy could only exist in the term of office for a mayor of a fifth class city—Blatt's time had expired.

Appellant Gerard has relied upon the cases of Pinkston v. Watkins, 186 Ky. 365, 216 S.W. 852, and Baker v. Combs, 194 Ky. 260, 239 S.W. 56. We believe they require discussion.

In the Pinkston case, appellant had been elected police judge of Owensboro in 1913 for a term of four years. In 1916, the city adopted the commission form of government. At the regular election in 1917 for a city of its class, Pinkston was re-elected police judge. The General Assembly, in the Act which created the commission form of government, had attempted to set up an

arrangement where, in certain years, a mayor and two commissioners would be elected, and in other years a police judge and two commissioners would be elected. In doing so, it attempted to shorten the constitutional term of the police judge to two years only, in order that the terms of the police judges and the mayors would be staggered. In 1918, in an attempt to comply with the provisions of the Act, an election was held for the office of police judge. This, of course, was midway in the term for which Pinkston had been elected in 1917. Appellee Watkins won the election and in the controversy which came to this Court, it was held that the legislature could not disregard the express language found in Sections 160 and 167 of the Constitution which specifically set the length of the term of the police judge at four years and which also specifically provided for the years on which such elections must be had. We find nothing in this case that indicates there was ever a vacancy in any part of the term for which Pinkston was elected in 1917. The Court was concerned in that case with a term which began on time and in which no vacancy had occurred. Such is not the situation in the case at bar.

Similarly in Baker v. Combs, there was an attempt to cut down the term of a police chief who had entered office at the beginning of the term fixed by the Constitution and no vacancy had occurred.

Quite a different situation is presented in cases where a person enters a term of office for a fixed length of time at the beginning of the term than where a party is elected to a term which has already partially expired, and in that difference we think lies the distinction between the case at bar and the cases relied upon by appellant.

It is regrettable that this declaratory judgment suit was not presented to us before the 1957 election so that all concerned would have known the length of service which the elected officer would have.

We believe the Circuit Court was correct in its conclusion and the judgment is therefore affirmed.

WILLIAMS, J., not sitting.

BIRD and MILLIKEN, JJ., dissenting.