**CITY OF FRANKFORT, Kentucky, Appellant,**

v.

**Harry G. TRIPLETT, Appellee.**

Court of Appeals of Kentucky.

Feb. 22, 1963.

Allen Prewitt, Frankfort, for appellant.

E. Gaines Davis, Jr., Smith, Reed & Leary, Frankfort, for appellee.

PALMORE, Judge.

The City of Frankfort was reclassified from a 3d to a 2d class city in 1956. Later in the same year its electorate adopted the city manager form of government, KRS 89.400 et seq. In January of 1958 the police judge appointed the appellee, Harry Triplett, as clerk of his court, whereupon the board of commissioners enacted an ordinance fixing the clerk's salary at $250 per month and purporting to prescribe his duties. (We say "purporting" because, among other things, the ordinance directed the clerk to collect all fines, forfeitures and costs imposed by the police court, a duty that KRS 26.530(2) assigns exclusively to the chief of police.) In 1959, pursuant to a general increase for city personnel, the police court clerk's salary was raised to $275 per month, but on February 9, 1960, a newly elected board of commissioners

enacted an ordinance reducing it to $30 per month. Triplett continued to carry out his functions as police court clerk but declined to accept the reduced salary and later brought this action contesting the validity of the 1960 ordinance. The circuit court declared the ordinance unreasonable, arbitrary and void and entered judgment directing that he be paid back wages at the rate of $275 per month to the date of judgment. The city appeals.

To say that some degree of confusion attended Frankfort's transition from a 3d class city with a councilmanic government to a 2d class city with a city manager form of government would be an understatement. Cf. Gerard v. Judd, Ky.1959, 331 S.W.2d 119. With respect to the police court, the *reclassification* introduced two major changes, as follows:

·(1) Whereas the police judge theretofore had been clerk of his own court, KRS 26.-580, he was now empowered to appoint a clerk, who was entitled to receive a salary fixed and paid by the city. KRS 26.570.

(2) Whereas all fines, forfeitures and costs recovered in the police court had been collected by the city marshal, KRS 26.530 (3), they were now to be collected by the chief of police. KRS 26.530(2). For some unaccountable reason, however, KRS 26.530(2) either remained undiscovered or was ignored by the officialdom of the city until some time after the instant litigation was commenced, and the police court clerk performed this function pursuant to the aforementioned ordinance of January, 1958.

The principal question in the case is whether the change in *form of government* affected the status of the police court clerk. The city contends that it did, in that the office or position was ipso facto abolished per KRS 89.420, and that even if this were not so, the fixing of the clerk's salary was a matter of municipal legislative discretion which may not or should not be disturbed by the court.

KRS 89.420 literally abolishes all nonelective city offices in 2d, 3d and 4th class cities that have adopted the city manager form of government. KRS 89.040 contains an identical provision with respect to 2d and 3d class cities upon adoption of the commission form of government. Nevertheless it was held in Black v. Sutton, 1945, 301 Ky. 247, 191 S.W.2d 407, that the latter statute did not have the practical effect of eliminating the nonelective office (as an office) of city attorney. Whatever may have been the ostensible rationale by which this result was reached, it is apparent that the real basis of the opinion was that the court did not believe the legislature ever actually intended (though it had the power) to reduce the position of city attorney from officer to employe and thus permit permanency of tenure.

■ Myopic exactitude in the construction of statutes would produce many an unfortunate and unintended result. An interpretation that would produce an effect manifestly inconsistent with sound public policy is to be avoided unless it is utterly clear that the legislature actually so intended. The more unwise and unsound the result of a literal construction appears to be, the more specifically must such an intention be expressed in the statute in order for the courts to be justified in construing it literally. This is merely a corollary of the rule that the courts will not give a strict literal construction to a statute if it would lead to an absurd or unreasonable conclusion. Cf. Commonwealth, etc. v. Wilkins, Ky.1959, 320 S.W.2d 125.

■ The public policy pervading this case, and against the background of which KRS 89.420 must be examined, is one of the fundamental principles of our form of government, generally secured by Const. §§ 27 and 28 and made specifically applicable by KRS 84.020, which reads as follows:

"The government of each city of the second class shall be divided into a legislative, an executive and a judicial branch.

No officer of one of these branches shall exercise any power properly belonging to either of the others, except as expressly directed or permitted by law."

■ The clerk is an arm of the police court. He performs duties that would have to be done by the judge himself if he had no clerk. These include the preparation of bonds (KRS 28.035), the keeping of minutes of proceedings (KRS 28.050), step sheets (KRS 28.060) and witnesses' attendance records (KRS 28.110), and the taxation of costs (KRS 28.120). He also exercises powers that otherwise could be exercised only by the judge, including the issuance of summonses, subpoenas and warrants (KRS 26.330), and the taking of affidavits and administration of oaths (KRS 28.045). While he does not have enough of the powers and responsibilities of a judge to be himself a "judicial officer," all that he does is part of the judicial function. Obviously he is part of the city's "judicial branch" within the meaning of KRS 84.020.

■ It is to be presumed that in authorizing clerks for police courts in cities of the first and second classes KRS 26.540 and 26.570 recognize that in larger cities the volume of work creates a need for it. This need, of course, is not affected by a change in form of government, and there is no reason to suppose that the legislature intended to deprive the police judge of the services of a clerk for the irrelevant reason that the city manager form of government has been adopted. It follows, then, that if the office is indeed abolished by KRS 84.020, it must have been intended that its duties be undertaken by some other employe within one of the administrative departments (KRS 89.580) under the supervision of the board of commissioners. In other words, there must have been a legislative purpose to shift dominion over the clerk from the court to the board of commissioners. In the determination of whether such a purpose actually existed, inquiry into whether there was any reason for it provides an apt source of enlightenment. As suggested in Swift v. Southeastern Greyhound Lines, 1943, 294 Ky. 137, 171 S.W.2d 49, 51, when the literal meaning of a statute is a substantial departure from long-established state policy, "the doubt thereby arising as to the legislative intent requires an examination of available information bearing on the purpose desired to be accomplished by the legislation in question."

■ The city manager form of government is designed to achieve greater efficiency in the operation of the city's executive and legislative departments. McQuillin, Municipal Corporations (3d ed.), § 9.21, Vol. 2, p. 529. Its focus is on the "administration of the business affairs of the city." Cf. KRS 89.570. Mention of matters judicial is conspicuously absent from KRS 89.500, which vests in the board of commissioners "all the legislative, executive and administrative power of the city," etc. The only thing a court is supposed to administer is justice, and justice is not a "business affair." The executive and legislative heads of the city have no responsibility for the manner in which justice is administered in the police court. The elected police judge alone is answerable, and likewise must he alone be responsible for the performance of the clerk. It is an inevitable conclusion that the mayor and commissioners simply have no legitimate supervisory interest in the police court clerk. This circumstance removes the case from analogy with Sproles v. Mauney, 1931, 239 Ky. 138, 38 S.W.2d 969, and other related precedents cited by the city.

■ There being no reason for abolition of the clerk's office or for its transfer to the supervision and control of the board of commissioners, and abundant policy considerations to the contrary, it is our conclusion that KRS 89.420 is not specific enough to express a legislative intent to remove police courts in city manager operated cities from the purview of KRS 26.570. Cf. Black v. Sutton, 1945, 301 Ky. 247, 191 S.W.2d 407.

Under our view of the case it would make no difference whether the police court clerk is an "officer" or an "employee," and we find it unnecessary to consider that question.

The remaining issue is whether the ordinance of February 9, 1960, fixing the salary of the clerk at $30 per month was valid.

"The fixing of salaries of public officials is impressed with public interest, and officials vested with authority to fix such salaries should act justly and reasonably and not arbitrarily in so doing." McQuillin, Municipal Corporations (3d ed.), § 12.179, Vol. 4, p. 24.

Where compensation of a municipal officer is not fixed by statute, the power to fix it generally is vested in the municipal legislative body, but it may not effectually provide that there shall be no compensation at all, or practically destroy the office by fixing the compensation at so low a figure that no one will take the office. 62 C.J.S. Municipal Corporations § 536, p. 984.

"It is a well-settled principle of law that where the Legislature creates an office, a city council can not abolish or nullify it either by direct or indirect means. It stands to reason that a municipal council cannot fix the salary * * * so low that a competent person can not afford to accept the office. If the council attempts to do this, the court may interfere to prevent the abuse by the council of its discretionary right to fix the * * * salary." State ex rel. Bass v. Mayor and Board of Aldermen, 1944, 204 La. 940, 16 So.2d 527.

The foregoing principle has been recognized with approval by this court in Taylor v. Adair County, 1905, 119 Ky. 374, 84 S.W. 299, 27 Ky.Law Rep. 36, and Graves v. City of Paducah, 1905, 28 Ky.Law Rep. 576, 89 S.W. 708, and we agree with the trial court that it applies to this case. From the statutory duties and powers we have already mentioned, it is readily apparent that the office of police court clerk in a city of the second class requires a person of more than passing capabilities and character, one not likely to be attracted by the salary of a garbage collector. And considering the fact that the appellee was required to attend regular sessions of the Frankfort Police Court on four afternoons of each week, the attempted reduction of his salary from $275 to $30 per month was arbitrary and unreasonable and the ordinance was subject to judicial attack as an abuse of discretion. Const. § 2.

The judgment is affirmed.