## Paslick v. Shay, et al.

(Decided May 31, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Public Administrator and Guardian—Order Appointing—What Need Not Show—Infants.—Under section 3905 of the Kentucky Statutes, which authorizes the county court to confide to the public administrator and guardian, the care and control of the persons and estates of all minors, in case it shall appear that such

minor has no testamentary guardian, and no one will apply for or serve as such by the appointment of the court, it is not necessary to its validity that the order confiding an infant's estate to the public administrator and guardian should show upon its face that the minor had no testamentary guardian, or that no one, would apply for or serve as such by the appointment of the court.

2.  County Court—Jurisdiction—Appointment of Guardian.—The county court in matters of probating wills and appointing executors and guardians, has general and exclusive jurisdiction, and the appointment of the guardian will be treated as valid until it is affirmatively shown that the court did not have jurisdiction to make the appointment.

3.  County Court—Jurisdiction—Collaterally Calling in Question.— The proceedings of the county court in matters of probate and administration are not conclusive as to the jurisdiction of the court, and such jurisdiction may be collaterally called in question where the proper averments are made; but, in such cases the. onus is upon the party raising the issue, to show the want of jurisdiction.

4.  Infants—Suit by Adult Joint Owner to Sell Real Estate of Infant. —Under subsection 2 of section 490 of the Civil Code, a court of equity has jurisdiction at the suit of an adult joint owner against the infant joint owners and their statutory guardian, to sell real estate owned by them, in which they also have a right of homestead.

5.  Homestead—Coercive Sale—Exemption From—Right of Owner to Dispose of Homestead.—Section 1702 of the Kentucky Statutes, which exempts from coercive sale for debt a homestead not exceeding $1,000.00 in value, places no limitation upon the right or power of the owner of the homestead to dispose of it, whether such owner be sui juris or not.

POPE NICHOLAS and KOHN, BINGHAM, SLOSS & SPINDLE for appellant.

WILSON D. CRABB for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellees, Maude M. Shay, Arthur L., Onie V. and Roy S. Brentlinger were the owners of a 25 foot lot on Goss avenue in Louisville, Ky., which was devised to them by their father, George S. Brentlinger. Maude is of age; Arthur and Onie are infants over 14 years of age, while Roy is under 14.

On December 5, 1904, the Jefferson County Court entered the following order:

"Jefferson County Court.

"December 5, 1904.

"On motion of W. C. Caplinger, uncle of Arthur Brentlinger, Onie Brentlinger and Roy Brentlinger,

orphans of Onie L. Brentlinger, deceased, and under fourteen years of age, it is ordered by the court that the estates of the aforesaid infants be and the same are referred to Andrew M. Sea, Jr., Public Administrator and Guardian for Jefferson county, Ky.''

On January 28, 1911, the eldest daughter Maude, brought this action under subsection 2 of section 490 of the Civil Code, against her brothers and sister, and Sea, their guardian, for the purpose of selling the Gross avenue property because of its indivisibility, and for a division of the proceeds between the children. No objection is made against the proceedings taken in the case; it is admitted they comply with the requirements of the Code of Practice. Summons was properly served upon Artrur L. and Onie V. Brentlinger in person, and upon Sea, as guardian for Roy S. Brentlinger. Sea, as guardian for the three infants, filed an answer, joining in the prayer of the petition, and asked that the property be sold. Appellant Paslick became the purchaser at the commissioner's sale at $925.00. He filed exceptions to the sale, contending: (1) that the infant defendant Roy S. Brentlinger was not before the court, because the order confiding his estate to Sea, the public administrator and guardian, and upon whom process was served as guardian, was void; and (2) because the property sold was the homestead of the infant defendants, and could not be sold against their will. The chancellor overruled the exceptions, confirmed the sale, and from that order Paslick prosecutes this appeal.

1.   Section 3905 of the Kentucky Statutes provides as follows:

''The several county courts of this Commonwealth, in which there is a public administrator and guardian, shall confide to him the administration of the estate of deceased persons in all cases in which, by law, the jurisdiction to grant letters testamentary or administration applies, if it shall appear, after the expiration of three months from the death of the decedent, that no one will qualify as executor or apply for administration; and shall also confide to said public administrator and guardian the care and control of the persons and estates of all minors, in case it shall appear that such minor hath no testamentary guardian, and no one will apply for or serve as such by the appointment of the court.''

Appellant contends that the order of December 5, 1904, is void because it neither recites that there was no

testamentary guardian for Roy S. Brentlinger, nor does it recite that no one other than the public administrator would qualify as guardian. By his will George S. Brentlinger nominated William Fisher as the guardian for his children, but Fisher declined to qualify. On the other hand, appellees contend that the county court, in the probate of wills and in the appointment of administrators and guardians, is a court of general and exclusive jurisdiction, and that it will be presumed to have had jurisdiction to make the order until the contrary appears; and that if an attack is made upon an order appointing a guardian, it must be affirmatively shown that the jurisdiction did not exist. It is admitted by appellees that the county court is of limited jurisdiction; but it must be further conceded by all parties that the jurisdiction of that court to probate wills and appoint administrators and guardians is not only general, but exclusive. Conceding, therefore, that the jurisdiction is general and exclusive with respect to these subjects, the appointment of the guardian must be treated as valid until it is affirmatively shown that the court did not have jurisdiction to make the appointment.

This question was considered at length in Jacobs' Adm'r. v. L. & N. R. R. Co., 10 Bush, 270, in an able opinion by Judge Lindsay, where it is said:

"There is no case in which this court has held that it was necessary to its validity that the order of a county court probating a will or granting administration should show upon its face facts conferring jurisdiction upon the particular court in which the order was made. Whether upon an appeal an order failing in this regard would or would not be reversed we do not now decide; but it cannot be treated as void in a collateral proceeding.

"In the response of this court to a petition for a rehearing in Singleton v. Coger (7 Dana, 494), in which the question as to the validity of a judgment of the circuit court was under consideration, Chief Justice Robertson used this language: 'But does it necessarily follow that in such a case as this, or in all cases, however the question of jurisdiction may be presented, the silence of the record of the judgment or decree as to a fact essential to the jurisdiction shall be conclusive proof that the judgment or decree is void? A county court of this State has no testamentary jurisdiction unless the decedent either lived in the county at his death

or had some estate in it. But if a record of the probate of his will should be silent as to both of these facts, would the probate be conclusively void?'

"The court did not seem to entertain a doubt that this inquiry would admit of any other than a negative reply, and it was in effect so answered in the subsequent case of Peebles v. Watt's Administrator (7 Dana, 102).

"The proceedings of the county court in matters of probate and administration are not conclusive as to the jurisdiction of the court, and such jurisdiction may be collaterally called in question where the proper averments are made; but in such cases the onus is upon the party raising the issue to show that want of jurisdiction. Where, as in this case, the jurisdiction is attacked by the pleading, the court should hear such testimony as either party may offer on this issue, and then permit the order of the county court to go to the jury as evidence or exclude it, as it may turn out that the court making it had or had not jurisdiction."

The Jacobs case was followed in Master's Exor. v. Bienker, 87 Ky., 5; Hatten v. Turman, 123 Ky., 851; and in Goss' Exor v. Kentucky Refining Co., 137 Ky., 403.

In the Goss case it was contended that the order appointing Reiss executor of Goss was void, because the order failed to show that Goss was domiciled in Jefferson county at the time of his death. In overruling this contention we said:

"As to the second proposition—that is, that appellant is not authorized to maintain this action as executor because it is not shown that Goss resided in Jefferson county at his death, and therefore the county court was without jurisdiction to probate his will, the rule is that a court of general jurisdiction will be presumed to have had jurisdiction of all matters before it, unless the contrary is made to appear. The county court in matters of probating wills has general and exclusive jurisdiction, and therefore it must be presumed that the county court of Jefferson county would not have probated Goss' will unless he was domiciled in that county. In courts of limited jurisdiction it must be made to appear affirmatively that the court had jurisdiction of the matter, i. e., if the county judge holds an inquisition of the lunacy, his orders must show affirmatively all things necessary to give jurisdiction because he has no right to hold such inquisition if the circuit court of the county is in session.

But this is not true in the probation of wills, because the statutes give the county court exclusive jurisdiction in such cases."

Under the state of this record we must assume, therefore, that the Jefferson County Court found the facts necessary to give it jurisdiction to make the order complained of. The order was not void; at most it was only subject to attack, with the burden of showing the facts that would defeat the jurisdiction upon the party attacking; and as this has not been done, or even attemped, the order appointing Sea must be treated as valid. Jones, Admr. v. I. C. R. R. Co., 26 Ky. L. R., 432; City of Louisville v. Hart, 143 Ky., 177.

2. The second exception is, in our opinion, concluded by the opinion of this court in Jenkins v. McVaw, 145 Ky., 205, where the precise question here presented was decided adversely to the contention of appellant. In that case, as in this, land belonging to infant children had been sold, for a division of the proceeds between them. The children and their statutory guardian were made defendants; the infants by their guardian filed an answer joining in the prayer of the petition, and the property was sold under a decree of the court to McVaw. In a subsequent suit for a specific performance of a contract of sale between McVaw and Jenkins, the latter insisted that as the property was worth less than $1,000.00, and was occupied by the father of the Miller children as a homestead at the time of his death, his infant children had a right of homestead therein until they became 21 years of age respectively, under section 1707 of the Kentucky Statutes; and that this fact deprived the court of jurisdiction to sell the land. This claim, of course, raised the validity of the judicial sale to McVaw. In upholding that sale this court said:

"The question presented by the record for decision, therefore, is, has a court of equity jurisdiction under section 490, subsection 2, Civil Code, and at the suit of infants by their statutory guardian, to sell real estate owned by them and in which they also have a right of homestead, under section 1707, Kentucky Statutes? Section 490 of the Code places no restriction upon the power of the court to sell, at the suit of an infant, real estate in which he may have, in addition to the ownership of the title, a right of homestead. So, unless there is something in the homestead statute itself taking from

the court such jurisdiction, the jurisdiction will not be questioned.

"Section 1702, Kentucky Statutes, exempts from coercive sale for debt, a homestead not exceeding $1,000 in value. Section 1706 declares that the exemption with which the debtor is thus favored shall continue after his death for the benefit of his widow and children; and section 1707, that:

"The homestead shall be for the use of the widow as long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age.

"It will readily be seen from a reading of the several sections of the homestead statute that it places no limitation upon the right or power of the owner of the homestead to dispose of it, whether such owner be sui juris or not."

In support of the view there taken, the court cited Brame v. Craig, 12 Bush, 404; Lord v. Lord, 82 Ky., 521; Schnabel v. Schnabel, 108 Ky., 536; Thompson v. Thompson, 32 Ky. L. R., 319, and quoted with approval its language in Warren's Admr. v. Warren, 126 Ky., 692, where it said, "the suggestion in Stanberry v. Sims, 79 Ky., 527, apparently in conflict with the views herein expressed, must be treated as dictum not necessary to a decision of the question before the court." The homestead statute is a beneficial statute, designed to protect debtors and infants, and not to impose restrictions upon their right of alienation. It may not always be expedient or practicable, as it was not in the case at bar, for infants to occupy or retain their homestead; and, in such a case it would be not only a misinterpretation of the intention of the legislature, but a hardship upon the infants to require them to occupy it in order to receive the benefit of it. In many cases, particularly in cases of extreme youth, the infant would not only be wholly incapable of caring for his property, but a sale of it might be necessary for his support and education.

The chancellor's judgment is in accord with these views, and is affirmed.