## Louisville & N. R. Co. v. Powers et al.

(Decided May 11, 1937.)

H. L. BRYANT and ASHBY M. WARREN for appellant.

E. B. WILSON for appellee Asher Coal Mining Co.

TUGGLE & TUGGLE for other appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

This action was instituted under the provisions of the "Declaratory Judgment Act," section 639a—1 et seq., Civil Code of Practice, in the Bell circuit court,

and tried by agreement by Special Judge Cleon K. Calvert. The purpose of the action was to obtain a declaration of the legal status of Elsie Eleanor Powers, the only daughter of Caleb Powers, deceased, and Dorothy Powers, his widow, under the will of Caleb Powers and to declare their rights or interest in a small parcel of land of about 1.48 acres situated in Bell county, Ky.

In order to get before us fully the facts on which this case is based, it is necessary to embody in our opinion the following: The Asher Coal Mining Company conveyed to the Louisville & Nashville Railroad Company certain lands situated in Bell county, to be used by the Railroad Company for the construction of a wye track; also, at a later period, the Asher Coal Mining Company gave to the Kentucky Ridge Coal Company an option upon a large boundary of land it owned in Bell county, which included the land it had conveyed to the Railroad Company. It is claimed the conveyance was made by oversight. It so turned out that the Kentucky Ridge Coal Company sought to exercise its option, and it was learned that the Railroad Company owned the piece of land where it wished to construct its tipple, and improvements in developing its coal properties. In order to settle the mistake that had been made by the Asher Coal Mining Company, it entered into a contract with the Railroad Company, that it would acquire another piece of land that would be equally suitable for the construction of the wye track and that would meet the convenience of the Railroad Company, and when that was done, the Railroad Company agreed to reconvey to the Asher Coal Mining Company the land it had conveyed to it. It appears that adjoining this land or near to it, the estate of Caleb Powers owned a large tract, on which it was more suitable for the wye track, than the one conveyed to it by the Asher Coal Mining Company; so the Railroad Company under this agreement with the Asher Coal Mining Company, instituted in the Bell county court a suit to condemn the site on the lands belonging to the Caleb Powers' estate, for the wye track. This proceeding was instituted against Elsie Eleanor Powers, an infant, the daughter of Caleb Powers, and his widow, Dorothy Powers, in her own right, and as the guardian for Elsie Eleanor Powers, and as personal representative of the

estate of Caleb Powers, deceased. At the time the action was instituted, Elsie Eleanor Powers and Dorothy Powers were in Washington, D. C.; that a corresponding attorney was appointed in that proceeding to represent them. A report was filed, stating that he had corresponded with the nonresident defendants, but had received information from them that they had employed attorneys to represent them. In that action they filed their joint answer, denying a portion of the allegations of the petition for the condemnation. A trial was had in the regular way and a judgment was rendered in favor of the defendants for the sum of $1,500 as the value of the lands and the incidental damages. An appeal from that judgment was instituted by Dorothy Powers, individually, and as statutory guardian for Elsie Eleanor Powers, and for Elsie Eleanor Powers, in her own right, to the Bell circuit court. In that court, Elsie Eleanor Powers was represented by her guardian and mother and the court appointed his master commissioner as a special trustee to represent Elsie Eleanor Powers, who filed an answer for her approving the proceedings. A trial was had on that appeal, resulting in a judgment for $2,000, the value of the land taken and all incidental damages. The circuit judge entered a judgment upon that verdict and according to the terms of the agreement the Railroad Company and the Asher Coal Mining Company, and requiring the court's commissioner to execute a deed to the condemned land to the Railroad Company. Thereupon the Railroad Company refused to pay the judgment until there was a construction of the will of Caleb Powers, declaring the rights of Dorothy Powers and her daughter, Elsie Eleanor Powers. This suit then was brought for that purpose by the Asher Coal Mining Company against the Railroad Company, Dorothy Powers, Elsie Eleanor Powers, and Dorothy Powers, as guardian for Elsie Eleanor Powers, and as personal representative of the Powers' estate. It appears that the will of Caleb Powers was duly probated and on record in the office of the county court clerk of Knox county; that since its probation, Dorothy E. Powers, the widow, in the proper manner, renounced the will and chose to take of the property willed by Caleb Powers under the law of descent and distribution. This was done before the institution of the condemnation proceedings. Therefore, the only interest that Dorothy Powers had in the land

condemned or in the land owned by Caleb Powers in Bell county, was a dower. The question now arises, What interest did Elsie Eleanor Powers have in the land?

This question was adjudged by the special judge of the Bell circuit court and the court's opinion was, that the title in the land condemned and adjudged to be deeded to the Railroad Company in the proceedings referred to, was complete; and that neither Dorothy Powers or Elsie Eleanor Powers had any interest in the parcel of land, or would have any, by reason of those proceedings, and adjudged that the Railroad Company would be safe in paying to Dorothy Powers and Elsie Eleanor Powers, the $2,000, and adjudged how the payments should be made. From that judgment, the Railroad Company appeals.

After the widow, Dorothy Powers, renounced the will, she was appointed by an order of the Knox county court, in the proper way, administratrix with the will annexed of the estate of Caleb Powers. Calling her administratrix instead of executrix with the will annexed did not make the order of appointment void. She was also appointed guardian of Elsie Eleanor Powers. Knox county was the county in which Caleb Powers lived at his death, or claimed to be his home, and which was necessarily the home of his widow and daughter. The Knox county court had authority to make the order of appointment.

The first question to be passed upon, we think, is, What effect in the condemnation proceedings, has the fact that the trustees named in the will of Caleb Powers, who failed to qualify, and the fact that no trustee was appointed in his place by the Knox county court, and none made a party to the condemnation proceedings in the Bell county court, except the appointment of Gilbert, master commissioner, as trustee, on the appeal in the Bell circuit court and answer approving of the affirming of the proceeding? To answer that question, it is necessary to examine the language of the will of Caleb Powers, providing for the appointment of a trustee for his infant daughter. That part of the will that is applicable to the question before us, is as follows:

"Fourteenth: I nominate and appoint W. H. Green of Barbourville, Kentucky, Executor and

Trustee of all of my estate which has not specifically been delegated to my daughter and trustee in the District of Columbia, which has not been specifically bequeathed to my said wife. The said Green is to have the responsibility of winding up all of my personal affairs and to receive and account for all of my personal estate; and he may collect, compromise, sell, or dispose of my personal property at public or private sale.

"The said Green shall have full control of all real estate and mineral rights in the State of Kentucky, bequeathed to my said daughter by this will; and I grant to the said Green full power and authority to lease, rent, sell, alien or convey by deed or other proper instrument of conveyance any or all of the property in the State of Kentucky, bequeathed to my said daughter and I expressly grant him the power to sign, execute and acknowledge deeds or other proper instruments to the purchaser or purchasers and to retain and exercise the management and control of said property until my daughter shall have attained the age of twenty-five (25) years, unless, in his discretion and judgment, he should sooner turn over to my daughter said property, which he is authorized to do, if, she shall have attained the age of twenty-one (21) years or shall have married and if he believes it would be for the best interest of my daughter. Said Green should be required to execute a reasonable bond fixed by the Knox County Court.

"Fifteenth: I direct that my daughter, Elsie Eleanor, enter Berea College at Berea, Kentucky, in September, 1932, and that she attend said institution until she shall have completed at least the high school course, and also for her to complete a Standard Four Year course along what lines of study she may select. If, after my said daughter has completed the high school course as above mentioned, my Kentucky Executor should be of the opinion that it would be for her best interest to attend some college other than Berea, it is my desire that said Executor and Trustee select another college in Kentucky for the completion of her college education.

"I direct that my Kentucky Executor out of

the estate bequeathed to my said daughter provide for her support, maintenance and education, as herein provided, until she attain the age of twenty-five years; unless he shall have sooner terminated this trust as provided in paragraph fourteen.''

We think that the executor named in the will and the trustee were to be the same person, and the duties of the trustee were to be exercised by the executor. The fourteenth clause of the will referred to, provided that his executor should wind up the estate, and that Green should do it, but we think the use of the word ''Green'' was unnecessary; that the powers over the personal property was given to him as executor; and as executor, the personal representative would have the right to administer all personal property. By an examination of the will, the court is of the opinion that as the testator reposed such confidence in Green and directed that Green, himself, should have the power as trustee, to carry out the terms of the will, that no one else but Green could do that. There is nothing in the will by which any power given Green might pass to any other person succeeding him. Any trustee that the court might have appointed to succeed him would have had none of the powers settled upon Green and would not have had the discretion that the testator confided to Green; and it appearing that Green refused to accept the trust, the result was that the trust became what is known as a ''dry trust,'' meaning by that, that no one else could carry it out. Gambell v. Trippe, 75 Md. 252, 23 A. 461, 15 L. R. A. 235, 32 Am. St. Rep. 388; Burroughs v. Cutter, 98 Me. 178, 56 A. 649, 99 Am. St. Rep. 392. So to have substituted a trustee for Green, he having refused to act, would have given that trustee no power, because he would not have been authorized to act under the terms of the will; so the trust in a substituted trustee would be a ''dry trust''; then the trust is now, as decided by the lower court, executed in Elsie Eleanor Powers, the beneficiary, and she had title to all of the property willed to her, subject only to the limitations of infancy and the four years following her majority. It appears that Dorothy Powers was appointed as her guardian. We do not think that her appointment was void, because of her living in Washington, D. C. She was before the court in the condemnation proceedings. The county court of Knox county had au-

thority to make the appointment; and even if the appointment was error, the action is conclusive on a collateral attack. Paslick v. Shay et al. 148 Ky. 642, 147 S. W. 369.

We discover from examining the record, that as a matter of precaution, the circuit court appointed a trustee in the condemnation proceedings on the appeal, to represent the interest of Elsie Eleanor Powers, and her interest was represented in the proceedings, not only by that trustee, but by her mother as guardian; so we have concluded that the circuit court had jurisdiction over all persons who had any interest in the strip of land in controversy, and of the subject-matter of the proceedings, and had jurisdiction to render the judgment in the condemnation proceedings; that the Railroad Company obtained a good title to the strip of land condemned.

Wherefore, the judgment is affirmed.