# Tandy & Fairleigh Tobacco Company, et al. v. City of Hopkinsville, et al.

### (Decided February 23, 1917.)

## Appeal from Christian Circuit Court.

1. Municipal Corporations—Licenses—Ordinances.—A municipal ordinance which levied a license tax "for the purpose of and to be paid into the general revenue funds of said city," sufficiently specified the purpose for which the tax was imposed to satisfy section 180 of the constitution, and subsection 12 of section 3290 of the Kentucky Statutes.

2. Municipal Corporations—Classification—Council.—Where a city of the fourth class having a town council consisting of seven members, as provided by section 3484 of the Kentucky Statutes, became a city of the third class, which is required under section 3270 of the Kentucky Statutes to have a common council composed of twelve members, and the act of the legislature transferring the city from the fourth class to the third class provided that the councilmen in office in the fourth class city when it was transferred to the third class should be continued and remain as the councilmen of the city after it had been so transferred to the third class, until their successors were duly elected, a meeting of the council at which six members were present contained a quorum, and was properly constituted to do business.

3. Municipal Corporations—Meeting of Council—Notice.—Although no notice of a special meeting of a town council was given, the presence of all the members at the meeting cured the irregularity caused by the failure to give notice of the meeting.

4. Municipal Corporations—Ordinances.—Section 3279 of the Kentucky Statutes, which requires that an ordinance shall be passed at two sessions held on different days, does not require that the sessions shall be regular sessions; it may be passed at a special session.

5. Evidence—Parol Evidence—Proceedings of Corporate Bodies.—The general rule that parol evidence is inadmissible to supply omissions, attack or explain records, applies to proceedings showing corporate action of parishes, school districts, and all forms of public or municipal corporations.

6. Licenses—Classification of Trades and Occupations.—It is competent for the legislature, by general laws, for state purposes, as well as by general laws designating the power to municipalities, to divide trades, occupations and professions into classes and to impose a different license tax on each class in which the trade, occupation or profession may reasonably be divided; and, such trades may be classified according to their character as wholesale and retail dealers, and, also acording to the volume of business done by them.

7. Licenses—Question for Taxing Power.—Ordinarily, the reasonableness of a license fee imposed as a tax is a question for the taxing power, and the courts will not interfere with its discretion unless the tax imposed amounts to a prohibition or spoliation of any useful or legitimate occupation.

8. Municipal Corporations—Ordinances.—A municipal ordinance which provides that where more than 200 hogsheads of tobacco are prized by a firm, it shall pay a license tax of $25.00, and for the excess over 200 hogsheads at the rate of 25 cents per hogshead, is not invalid upon the ground that it is discriminatory, confiscatory, or prohibitive.

JAMES BREATHITT, JR., for appellants.

W. H. SOUTHALL for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This case involves the validity of ordinances Nos. 16 and 20 of the city of Hopkinsville, a city of the third class, which imposed a license tax upon the tobacco dealers of that city.

Insofar as the ordinances are material to this case, they are identical. The appellants, who were tobacco dealers of Hopkinsville, filed their petition in equity attacking the ordinances insofar as they classified the tobacco dealers of the city for the purpose of imposing a license tax, and asked for an injunction against the collection of the tax imposed by the ordinances. The circuit court dismissed the petition, and the plaintiffs appeal.

1. It is insisted that both ordinances are invalid for the reason that their titles fail to specify distinctly the purpose for which the tax is levied, as is required by section 180 of the constitution, and subsection 12 of section 3290 of the Kentucky Statutes.

Section 180 of the constitution reads as follows:

"The general assembly may authorize the counties, cities or towns to levy a poll tax not exceeding one dollar and fifty cents per head. Every act enacted by the general assembly, and every ordinance and resolution passed by any county, city, town or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

Subsection 12 of section 3290 of the Kentucky Statutes, passed in pursuance of section 180, *supra,* and con-

stituting a part of the charter of cities of the third class, provides, in part, as follows:

"All taxes and license fees shall be levied or imposed by ordinance; and the purpose or purposes for which the same are levied or imposed shall be specified therein, and the revenue therefrom shall be expended for no other purpose than that for which it is collected."

The ordinances in question provide "that said license fees are hereby fixed, and established, imposed and levied for the purpose of, and to be paid into, the general revenue funds of said city."

So, the first question before us is: Does a levy for "the general revenue funds" of the city, satisfy the constitution and statute, *supra,* as to distinctness of specification of the purpose of the levy?

In the conduct of a city's financial affairs, *ad valorem* taxes of specified amounts are usually levied for certain purposes which are specified in the ordinance, and taxes thus raised cannot be applied to any other purpose. Thus, it is common for a city to levy a tax for schools, sinking fund, police purposes, the fire department, for street and sewer cleaning, reconstruction of streets, street repairs, construction and repairs of sewers, charitable purposes, public parks, public libraries, or other purposes for which it is authorized to levy taxes. In addition, a city may have a revenue for general purposes not included in the other specified purposes, and which may be used to pay obligations not otherwise provided for. If a city could not raise a fund for general purposes, without a more particular description of the purpose, it would be required, in advance to carry the specification of its purposes to an unreasonable and impracticable extent, and would not be able to pay an unspecified debt, regardless of its merit or the urgency of its payment. This criticism is especially applicable where the fund is raised from licenses where the amount is dependent upon the number of licenses taken out, or the amount of business done, thereby making the amount of the tax uncertain. In dealing with this statute this court has given it a liberal construction.

In C. & O. S. W. Ry. Co. v. Commonwealth, 129 Ky. 318, the fiscal court levied a tax of "50 cents on the $100.00 valuation and $1.50 poll tax on each poll," without specifying any purpose for which the tax was levied. This court held the levy void because it had wholly failed

to specify any purpose for which it was levied; but, in the course of its opinion, the court said:

"We do not determine that great minuteness is necessary in these orders of the fiscal court. We only determine that the order before us does not show for what purpose the tax was levied, and that when taxes are levied for other purposes than the ordinary current expenses of the county, or there is a road tax, the order should specify the purpose for which the tax is levied."

From this it appears that a levy for the ordinary current expenses of the county would be sufficiently specific.

So, in Pulaski Co. v. Watson, 106 Ky. 505, the court upheld a county levy of an *ad valorem* tax "for the purpose of paying claims against the county," as being sufficiently specific; and, in City of Somerset v. Somerset Banking Co., 109 Ky. 556, a levy in precisely the same terms was sustained.

In City of Louisville v. Schnell, 131 Ky. 104, 40 L. R. A. (N. S.) 637, this court sustained a levy upon barbers "for the purposes of the sinking fund," as being sufficiently specific.

In Hillman Land & Iron Co. v. Commonwealth, 148 Ky. 647, a levy "to defray current expenses, such as salaries, maintenance of paupers, building of bridges, working of roads," was held to be sufficiently specific.

In Streine v. Commissioners Campbell Courthouse District, 149 Ky. 647, a levy "for the purpose of paying the debts and interest of the said district maturing in the year 1911," was sustained.

In Burch v. City of Owensboro, 18 Ky. L. R. 284, 36 S. W. 12, the court sustained a levy providing:

"That all moneys received from licenses under the provisions of this ordinance shall be paid to the treasurer, and placed to the credit of the general revenue fund of said city, and shall be used and expended in defraying the current and incidental expenses of the said government, except fifteen per cent. thereof shall be paid to the treasurer of the board of education for the use of the public schools of the said city, and shall be paid over by the said treasurer to the treasurer of the board of education monthly."

The record shows that the general revenue fund of the city of Hopkinsville is a distinct fund made up of taxes collected from licenses, fines and costs of the police court, pound fees, dog taxes, and other revenue received

from specified sources, and is kept separate and distinct from the other funds of the city. It is used for the feeding and caring for prisoners, expenses of the public library, expenditures in the city engineering department, for the construction, repairs and improvements of streets and sewers, the payment of judgments against the city, and all other incidental and emergency expenses not otherwise provided for. It will thus be seen that this separate and distinct fund maintained by the city is replenished to a very large extent by the license fees collected under the ordinances involved in this suit; and the purpose for which these fees are imposed is distinctly and definitely stated in the ordinances.

We conclude, therefore, that the purpose for which this license tax is imposed is sufficiently specific to satisfy the statutes.

2. It is next insisted that ordinance No. 20 is invalid because no quorum was present at the meeting of the board of councilmen on April 16, 1915, when it was finally passed. Section 3270 of the Kentucky Statutes, which is a part of the charter of cities of the third class, provides, in part, as follows:

"The common council shall be composed of twelve members, who shall be elected at a general election by the qualified voters of the city at large. They shall enter upon the discharge of their official duties on the first Monday in December next after their election, and shall hold office two years, and until their successors are elected and qualified."

Six members were present at the meeting held April 16, 1915, five of them voting for the ordinance, and one against it. It is contended that six members did not constitute a quorum to do business.

At the time, however, that these ordinances were enacted in December, 1914, and April, 1915, the town council consisted of seven members who had been elected at the regular November election in 1913, for a term of two years beginning on the first Monday in December, 1913. At that time, Hopkinsville was a city of the fourth class, and under its charter its legislative power was vested in a mayor and not less than six, nor more than twelve councilmen. Ky. Stats., sec. 3484. Acting under this authority the city, then being a fourth class city, had elected seven councilmen, and a majority of that number constituted a quorum. Ky. Stats., sec. 3486.

A vacancy having occurred in the board of council-men by the death of S. C. Buckner during the year 1914, C. W. Ducker was elected, at the regular election in November, 1914, to fill out the unexpired term of Buck-ner. No other members of the board were elected, how-ever, and it continued to act with a membership of seven. But, by an act of the legislature, approved March 20, 1914, and which became effective on June 15, 1914, Hop-kinsville and Middlesboro were transferred to and be-came cities of the third class. Acts 1914, page 171, now sections 2740 and 2741 Ky. Stats. This act further pro-vided that the officers elected in 1913 and all officers then serving in the cities which had been transferred from one class to another, should "be continued and remain as the officers in the cities in the class in which they are now placed and shall hold such offices until their succes-sors are elected at the regular November election in 1917." Ky. Stats., sec. 2741.

Section 156 of the constitution reads, in part, as fol-lows:

"The cities and towns of this Commonwealth, for the purposes of their organization and government, shall be divided into six classes. The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. . . . . The general assembly shall as-sign the cities and towns of the Commonwealth to the classes to which they respectively belong, and change as-signments made as the population of said cities and towns may increase or decrease, and, in the absence of other satisfactory information as to their population, shall be governed by the last preceding federal census in so doing; but no city or town shall be transferred from one class to another, except in pursuance of a law previously enacted and providing therefor. The general assembly, by a general law, shall provide how towns may be organized, and enact laws for the government of such towns until the same are assigned to one or the other of the classes above named; but such assignment shall be made at the first session of the general assembly after the organization of said town or city."

It is insisted that Hopkinsville being a city of the third class at the time these ordinances were adopted, it should have had a board of councilmen composed of twelve members, and that a majority of twelve members,

which was necessary to constitute a quorum, did not participate in the meeting of April 16, 1915, at which ordinance No. 20, was finally passed.

The validity of the act of 1914, *supra* (Ky Stats., sec. 2741), is attacked upon the ground that in permitting Hopkinsville and Middlesboro to continue with a council of only seven members, while other third class cities were required to have twelve councilmen, of whom seven constituted a quorum, it was special legislation in violation of section 59 of the constitution, which prohibits the passage of a special act where a general law can be made applicable, and section 60 of that instrument which prohibits the general assembly from enacting any special or local act by the repeal in part of a general act, or by exempting any city, town or district from the operation of a general act.

The act of 1914 is, however, a general act, classifying all the cities and towns of the State, and the provision thereof (Ky. Stats., sec. 2741) continuing the officers of the cities transferred from one classification to another in office in the new classification, is likewise general in its terms and application. The uniformity required by section 156 of the constitution is uniformity of powers and restrictions upon powers; and the organization and powers of each class are to be defined by general laws. In transferring a city from one class to another there is necessarily a break in the organization of the board of councilmen which must be provided for. It was never contemplated that the city should be without officers at any time, or should have two sets of officers at the same time. Gilbert v. City of Paducah, 115 Ky. 174.

It will be noticed, therefore, that the act of 1914 expressly provided that all officers elected in 1913 should be continued and remain as the officers of the city in the new class to which it had been transferred. In Gilbert v. City of Paducah, 115 Ky. 160, it was held that the officers of a city coming into the second class, like those of a city originally in that class, were entitled to hold their offices and receive the same compensation as before, until the induction into office of the officers elected at the next regular election for cities of the second class; and, that their powers, rights and duties were in no wise affected by the transfer of the city from the third to the second class. In the meantime, the city should be governed by, and under the general laws relating to, the class to which it had been assigned.

We conclude, therefore, that the board of councilmen in office at the time the transfer was made, properly remained in office until the expiration of their terms in December, 1915, and as such, constituted the legislative board of the city, at the time these ordinances were adopted, in December, 1914, and April, 1915.

3.    It is further insisted that ordinance No. 16 was not properly enacted. This objection is threefold and relates to the meetings of the board and to the vote cast. The ordinance was first read and passed at a regular meeting held December 4, 1914, when seven members were present and all voted for its passage. The board then adjourned to again meet on December 7, 1914, for the purpose, as recited in the minutes, of electing officers and passing license ordinance No. 16, for the second time. At the adjourned meeting held on December 7, 1914, the seven members were present, five voting for the ordinance, one voting against it, and one present who did not vote. While it is true the mayor did not issue a call for this adjourned meeting as is provided by section 3301 of the Kentucky Statutes, the council itself called the meeting, designating the purpose thereof, and all the members were present. The purpose of a notice being to inform the members that a meeting would be held and to procure their attendance, the necessity of the notice was dispensed with by the presence of all the members.

In 20 Am. and Eng. Enc. of Law, page 1211, the rule is stated as follows:

"As to special meetings called by the mayor or other chief officer, or the number of members required, personal notice must be given each member in a manner usually provided by the municipal charter. And such notice should specify the business to be transacted. But though there be no proper notice of the time of meeting, if each member of the board attends and acts in reference to matters clearly within the scope of their corporate powers, then such notice will be valid in the absence of a charter provision expressly or impliedly to the contrary. So also the presence of any member at a special meeting cures the irregularity of a failure of notice as to him."

The statute (sec. 3279 Ky. Stats.) requires that the ordinance shall be passed "at two sessions held on different days;" it does not require that the sessions shall be regular or special sessions or meetings. The argument, therefore, that the adjourned meeting was only a

continuation of the original meeting of December 4, 1914, and not a separate and distinct session, cannot prevail.

In this connection it is further contended that the ordinance did not receive the number of votes required to pass it, on its second reading at the meeting of December 7, 1914. This contention is based upon the fact that although the seven members were present, five voting for the ordinance and one against it, an attempt was made to show that one member retired from the council chamber before the vote was taken, and that the ordinance therefore received only five votes, which was less than a majority of twelve members, which it is claimed was the necessary number of councilmen in a city belonging to the third class. But, as was above determined, the council of seven members was properly constituted; consequently, when five voted for the passage of the ordinance, it received the required number.

Furthermore, the legislature having provided appellees with a clerk and having made it his duty to keep a true record of the general council, it can only speak by its records, which in this case show that seven members were present. The general rule that parol evidence is inadmissible to supply omissions, contradict or explain records, applies to proceedings, showing corporate action of parishes, school districts, and all forms of public or municipal corporations, full or *quasi*. McQuillin's Municipal Corporations, sec. 129; Dunn v. City of Cadiz, 140 Ky. 217; Mt. Pleasant v. Eversole, 29 Ky. L. R. 830, 96 S. W. 478; Spalding, &c. v. City of Lebanon, 156 Ky. 37.

4. Finally, it is claimed that the classification made by these ordinances is discriminatory in that all dealers in tobacco are not required to pay a license fee; and, that it is unreasonable.

Section 70 of the ordinance provides for the licenses here questioned, and reads as follows:

"Tobacco Dealers and Warehouses.

"Sec. 70. To engage in the business of selling, or having sold tobacco upon what is commonly known as the loose floor or engaging in the busiess of a loose floor tobacco sales, for each loose floor, per annum............$50.00.

"Subsec. 1. To engage in handling, stemming, retieing, drying or prizing tobacco either in leaf or strips, where less than two hundred hogsheads per year are prized, per annum ............................................................$25.00.

"Subsec. 2.   Where more than two hundred hogs-heads are prized, each of said persons, firms, associations or corporations engaged in such business shall pay for such excess over two hundred hogsheads at the rate of 25 cents per hogshead for each additional hogshead over two hundred prized or handled in the City of Hopkins-ville, Kentucky.

"Subsec. 3.   To engage in the business of conducting a tobacco warehouse where tobacco is stored, handled or kept in hogsheads, per annum................................$25.00."

It is competent for the legislature, by general laws, for state purposes, as well as by general laws designat-ing the power to municipalities, to divide trades, occupa-tions and professions into classes, and to impose a dif-ferent license tax on each class into which the trade, oc-cupation or profession may reasonably be divided; and, such trades may be classified according to their char-acter as wholesale and retail dealers, and, also, according to the volume of business done by them.   Furthermore, section 181 of the constitution authorizing the levy of occupation taxes, and section 171 of that instrument re-quiring taxes to be uniform, do not require the legisla-ture, either by general laws for state purposes, or in general laws for the benefit of municipalities, to impose license fees that must be levied on all trades, occupations or professions; but any one or more trades, occupations, or professions may be taxed, and others exempted.   See Hager v. Walker, 128 Ky. 1, 15 L. R. A. (N. S.) 195, and the cases therein cited.

In view of the uniform line of authorities upon this subject, it cannot be said that the ordinances are discrim-inatory in their classification, or in not requiring all dealers in tobacco to pay a license fee.

But, are the ordinances unreasonable in the amount of the license tax which they impose upon these appellants? It will be noticed that while the loose floor dealers and salesmen are required to pay a license tax of $50.00, and the hogshead dealer who prizes less than 200 hogsheads per year is required to pay a license  of $25.00, the hogshead dealer who prizes more than 200 hogsheads is required to pay a license tax of $25.00 on the first 200 hogsheads, and also to pay for the excess over 200 hogs-heads, at the rate of 25 cents per hogshead.   It appears from the record that the appellant, Tandy & Fairleigh Tobacco Company, handles from 4,000,000 to 6,000,000 pounds of tobacco yearly, and will pay between $600.00

and $1,000.00 as an annual license tax, under these ordinances. In support of its contention that this fee is excessive and unreasonable, appellant relies upon Hager v. Walker, *supra;* Fiscal Court of Owen County v. F. & A. Cox Co., 132 Ky. 738, 21 L. R. A. (N. S.) 83; City of Louisville v. Pooley, 136 Ky. 286, 25 L. R. A. (N. S.) 582; Bradford v. Jones, 142 Ky. 822; Weyman v. City of Newport, 153 Ky. 487; and City of Newport v. French Bauer Bros. Co., 169 Ky. 174. Ordinarily the reasonableness of a tax is not a question to be determined by the courts. Fiscal Court of Owen County v. F. & A. Cox Co., *supra;* Hardin v. Radford (Va.), L. R. A. 1913-B 858.

The rule as to when the courts will interfere upon the ground that the license fee is unreasonable, was stated as follows in Fiscal Court of Owen County v. F. & A. Cox Co., *supra:*

"It may be conceded that ordinarily the reasonableness of a license fee imposed as a tax is a question for the taxing power, and the courts will not interfere with its discretion. Hall v. Commonwealth, 101 Ky. 382, 41 S. W. 2. This rule, we think, however, is subject to the limitation that the tax imposed shall not amount to a prohibition of any useful or legitimate occupation. *In re* Quong Woo (C. C.) 13 Fed. 229; Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361; City of Ottumwa v. Zekind, 95 Iowa 622, 64 N. W. 646, 29 L. R. A. 734, 58 Am. St. Rep. 447; Van Sant v. Harlem Stage Co., 59 Md. 330; Brooks v. Morgan, 86 Mich. 576, 49 N. W. 633, 24 Am. St. Rep. 137; Caldwell v. City of Lincoln, 19 Neb. 569, 27 N. W. 647. While there are numerous authorities to the contrary, it will be found that the license fee involved in those cases was not prohibitive, and the courts simply declared the general rule that the reasonableness of the tax was a matter within the discretion of the taxing power."

And, in The Sperry & Hutchinson Co. v. City of Owensboro, 151 Ky. 389, Ann. Cas. 1915-A 373, the above rule was reannounced in a trading stamp company case, where the license fee was so large that the court was bound to conclude it was intended to prohibit the business; and, for that reason, it was held to be unreasonable and invalid.

The same rule was applied in the Pooley case, where a license fee was imposed upon pawnbrokers, which amounted to 80 per cent. of their profit. The general

rule, therefore, being that the courts will not interfere with the license fee upon the ground that it is unreasonable or excessive, unless it is so large as to amount to a prohibition or spoliation of the business, we can not say that the license fee imposed in this case is excessive or unreasonable.

Judgment affirmed.