**LOWE et al. v. CITY OF BOWLING GREEN.**

Court of Appeals of Kentucky.

March 21, 1952.

Morris Lowe, Henry J. Potter, Jr., Bowling Green, for appellants.

Maurice D. Burton, Bowling Green, for appellee.

STANLEY, Commissioner.

The appeal brings for review a judgment holding valid a voted bond issue and an ordinance adopted by an illegally constituted council of Bowling Green authorizing the issuance and sale of the bonds.

No question is raised as to the correctness of the judgment in so far as it validates the bonds. The record shows the amount to have been within the constitutional limitations and the procedure and election approving the issuance to have been proper.

The election sanctioning the bonds was held November 8, 1949. Bowling Green annexed a large suburban area on April 4, 1950. Rigelwood v. City of Bowling Green, Ky., 238 S.W.2d 147. It is argued that the statute which requires the taking of the sense of the people as to whether the debt should be incurred and the property made subject to the special tax, KRS 66.050, was not complied with since the people in the annexed territory did not vote on the question. When property is annexed to a municipality, its status becomes the same as that of all other property within the city and subject to the same burdens of taxation. This includes obligations of bonds voted before annexation. City of Lebanon v. Bevill, 38 S.W. 872, 18

Ky.Law Rep. 924; Gernert v. City of Louisville, 155 Ky. 589, 159 S.W. 1163, 51 L.R.A., N.S., 363.

That portion of the judgment holding valid an ordinance authorizing the actual issuance and the sale of the bonds presents a novel and disturbing question. On June 15, 1950, Bowling Green became a city of the second class, Chapter 136, Acts of 1950, and was thereafter "governed by and under the general laws relating to" that class, although the "powers, rights, duties, or obligations of the city, or of any officer, employe, debtor or creditor of the city" were not affected. KRS 81.030. But this fact seems to have been overlooked as it relates to the legislative body. As a city of the third class, the legislative power was vested in a unicameral "Common Council" composed of twelve members, since the commission form of government had not been adopted. KRS 85.040. The legislative branch of the government of a city of the second class is bicameral, consisting of a board of aldermen and a board of councilmen, which together are known as the "General Council." KRS 84.030. When the city was transferred to the second class, it remained the same municipality but its existence and operation continued under a different charter, the statute, which is in effect its constitution, and that law governs the manner of electing all officers. Boyd v. Chambers, 78 Ky. 140; Carroll v. Fullerton, 215 Ky. 558, 286 S.W. 847.

The decision of the trial court doubtless was based on the concept that public policy requires a city shall never be left without officers or a governing body. Such is the contemplation of the Constitution. Tandy & Fairleigh Tobacco Co. v. City of Hopkinsville, 174 Ky. 189, 192 S.W. 46; 62 C.J.S., Municipal Corporations, § 386. But those statements have been made with reference to situations which required or permitted the holding over of officers in the same or similar offices and not where there was a failure to fill vacancies in a newly created office.

It could be said that the members of the "Common Council" continued in office and

functioned as the "Board of Councilmen" until their terms expired (December 3, 1951) under the provisions of KRS 81.020. We held the city attorney of Bowling Green did because of similarity of that office in each class of city. Burton v. Graham, Ky., 242 S.W.2d 855. See Bybee v. Smith, Ky., 57 S.W. 789; Gilbert v. City of Paducah, 115 Ky. 160, 72 S.W. 816. But we are still confronted with the fact that the vacancies in the entire membership of the newly established General Council were not filled as they should have been. Warren v. Blatt, 280 Ky. 185, 132 S.W.2d 933. At the November, 1951, election the twelve men who had composed the old council offered themselves for election for the ensuing two-year terms as members of the "Common Council," and were elected to such a body—not as members of the board of councilmen of the General Council of a city of the second class. This is stipulated of record. On December 3, 1951, these men assumed to enter into offices which were nonexistent.

■■ As stated in our leading case of Hildreth's Heirs v. McIntire's Devisee, 1 J.J.Marsh. 206, 24 Ky. 206, 19 Am.Dec. 61, "There might be under our Constitution, and there have been, de facto officers. But there never was and never can be under the present Constitution a de facto office." In that case proceedings were instituted to enforce a mandate of what is known historically in Kentucky as the "New Court" which the legislature had assumed to create in place of the constitutional Court of Appeals, which it had assumed to abolish. Since the legislature had no power to establish such a court, those appointed to membership thereon could not be regarded as de facto officers, and their orders were of no effect whatsoever from the legal standpoint. As stated in Note, 99 A.L.R. 299, and supported by many cases, "The doctrine that a de jure office is a condition of a de facto officer has been frequently applied in cases where persons assumed to act as incumbents of offices which had previously been abolished, or under the

authority of statutes which had been repealed." The same uniformity of decision exists in respect to a claimed incumbent of an office not existing by virtue of any law. State ex rel. Tamminen v. City of Eveleth, 189 Minn. 229, 249 N.W. 184, 99 A.L.R. 289 and cases epitomized in the notes, 99 A.L.R. 300. Therefore, the argument cannot be sustained that these men were de facto officers and their adoptiion of the ordinance authorizing the issuance and sale of the bonds is valid.

Cases later than Hildreth's Heirs v. McIntire's Devisee, supra, involving acts of officers chosen under unconstitutional statutes or elected in an invalid election are distinguished in each. Coquillard Wagon Works v. Melton, 137 Ky. 189, 125 S.W. 291; Nagel v. Bosworth, 148 Ky. 807, 147 S.W. 940; Wendt v. Berry, 154 Ky. 586, 157 S.W. 1115, 45 L.R.A.,N.S., 1101, Ann.Cas. 1915C, 493; Goin v. Smith, 202 Ky. 486, 260 S.W. 10.

■■ If the foregoing regarding those assuming to act as the Board of Councilmen were not enough, then there is the unsurmountable fact that when the purported ordinance was adopted, Bowling Green did not have a board of aldermen. None has ever been organized. The statutory provision for the bicameral legislative body obviously is patterned after the Congress of the United States and the General Assembly of Kentucky. It must be considered that the principles governing those bodies are applicable. A concurrence of both branches in the enactment of an ordinance is required, for there is but one legislative body although the two independent chambers act separately. McQuillan, Municipal Corporations, Secs. 13.41, 16.31; Wetmore v. Story, 22 Barb., N.Y., 414. Indeed, KRS 84.100 provides that no ordinance or resolution shall be passed until it has been voted by a majority of the members of each board after having been read therein.

We are, therefore, constrained to hold that the ordinance is invalid. The judgment is

Reversed.