**RICH–HILLS CATERING COMPANY, Inc., d/b/a, etc., et al., Appellants,**

**v.**

**Charles J. SLATTERY and Tom McBride, Appellees.**

Court of Appeals of Kentucky.

Oct. 31, 1969.

Rehearing Denied Jan. 23, 1970.

Ben B. Fowler, A. James Higgs, Dailey & Fowler, Frankfort, Warfield Z. Miller, Richmond, John D. Darnell, Frankfort, for appellants.

William E. Johnson, Johnson & Burton, Frankfort, for appellees.

WADDILL, Commissioner.

The question presented for decision is whether legally "dry" county territory that is annexed to a legally "wet" city becomes "wet" territory following the annexation. The trial court was of the opinion that the annexed territory remained "dry" and, therefore, held that the Kentucky Alcoholic Beverage Control Board acted in excess of its powers in issuing beer and drink licenses for appellant's business premises which are located within the annexed territory. Judgment was entered accordingly. We affirm because we believe that the annexed territory remains "dry" and subject to the local option status that existed in the territory prior to the annexation.

Appellant, Rich-Hills Catering Co., Inc., d/b/a Holiday Inn, operates a business located near the junction of the Eastern By-Pass Road and Interstate Highway 75 in Richmond, Madison County, Kentucky. Prior to October, 1964, appellant's premises were located in legally "dry" territory adjacent to the city of Richmond, but situated exclusively in Madison County. During October 1964, the territory on which appellant's premises are located was annexed to the city of Richmond which city is legally "wet."

Following the annexation appellant filed an application with the Kentucky Alcoholic Beverage Control Board seeking a retail beer and drink license for its premises which were then located within the city. The board, on July 26, 1968, issued these licenses. However, appellees, who had protested the issuance of these licenses when the matter was pending before the board, appealed to the Franklin Circuit Court alleging that appellant's premises were located in legally "dry" territory and, therefore urged that the board had exceeded its powers in issuing the licenses. The circuit court upheld appellees' contention and directed the cancellation of the licenses. The question of the correctness of the judgment effectuating the court's decision is before us for review.

Appellant contends that, once a territory is properly annexed to a municipality, the residents of the annexed territory become subject to the rights and privileges as well as the burdens of the municipality. In support thereof the following statement found in 37 Am.Jur., Municipal Corporations, section 34, pp. 651, 652, is cited:

"The annexation to a municipal corporation of property which has previously been without the corporation is an act of the state, and such property thereafter stands just as any other property within the corporation. A public highway within the annexed territory becomes ipso facto a street of the municipality. In the absence of special provision to the contrary, all ordinances and contracts of a general character are simultaneously extended over and become operative in the added territory, so that such territory becomes entitled to the same privileges and subject to the same burdens as that within the original limits. * * *."

Appellant further urges that, in Gernert v. City of Louisville, 155 Ky. 589, 159 S.W.

1163, 51 L.R.A.,N.S., 363, and in the recent case of Lowe v. City of Bowling Green, Ky., 247 S.W.2d 386, we have properly decided that once territory is annexed to a city it becomes subject to the same burdens and privileges as the original territory therein. In Gernert, supra, the question was raised concerning the liability of Louisville for damages allegedly suffered by a property owner when, in the process of converting county roads to city streets subsequent to the annexation of the involved area, the city altered the grade of the road adjacent to plaintiff's property. Insofar as pertinent to the question presented by the instant case, we said:

"* * *. When property is thus included in a city, it stands just as any other property within the city. The public highway becomes ipso facto a street of the city. * * *."

And in Lowe, supra, we held that, where residents of a city had voted a bond issue prior to the annexation of a suburban area, the fact that the residents of the newly annexed area did not vote on the bond question did not prevent their property from being subject to the same burdens of taxation as other property in the city, including the obligation on the voted bonds. As to the status of the territory annexed to the city we said:

"* * *. It is argued that the statute which requires the taking of the sense of the people as to whether the debt should be incurred and the property made subject to the special tax, KRS 66.050, was not complied with since the people in the annexed territory did not vote on the question. When property is annexed to a municipality, its status becomes the same as that of all other property within the city and subject to the same burdens of taxation. This includes obligations of bonds voted before annexation. * * *."

Hence, appellant argues, in effect, that if the law stated in Gernert, supra, and Lowe, supra, is not applied in the instant case, it must follow that the "dry" territory annexed to the "wet" city became "wet" territory after the annexation.

On the other side of the case appellees contend that once a territory is voted "dry," it remains "dry" territory even though it is later annexed to a "wet" city. Appellees rely primarily on Prater v. Commonwealth, 11 Ky.Op. 578 and Reeves v. Zirkle, Ky., 331 S.W.2d 723. In Prater v. Commonwealth, a criminal proceeding, Prater was convicted of selling intoxicating liquor in "dry" territory. The question was raised whether the territory was in fact "dry" territory. The facts were that at an election previous to the prosecution the voters of magisterial district No. 2 had voted for prohibition within the district. Subsequently, the county court created a new magisterial district, No. 9, consisting of a portion of the old district No. 1 which apparently was not "dry," and a portion of the old district No. 2, which was "dry." Prater was charged with unlawfully selling intoxicating liquor in district No. 9. The indictment failed to state whether the sale took place in the area which had previously been a part of old district No. 2. On appeal this court held the indictment defective and reversed the conviction. The language in the Prater opinion stated:

"It surely could not have been contemplated that the *county court* could defeat the will of the people in a vote for or against the measure by changing the boundary of the territory in which the vote had been taken in the creation of an additional voting precinct or magisterial district. No such power is vested in that tribunal by the act authorizing the vote, and the geographical boundary designated as the district still remains, although portions of it may be annexed or embraced within the civil districts as laid off for county purposes.

"Such a ruling would enable the county court in every instance to defeat the popular will by a mere change of the district. The right to determine whether spirituous liquors should be sold within

this boundary was taken from the county court by this local option law and vested within the voters in the boundary. They alone have the right to permit its sale by a subsequent vote, if prohibited in the first instance, and the county court has no power over it. But the indictment charges a sale in district No. 9, without alleging or specifying the boundary in which it was sold so as to enable the court to know that a portion of civil district No. 9 was within the district No. 2 in which the vote was taken; prima facie, the parties had the right to sell if licensed by the county court in district No. 9. For this reason the judgment is reversed and cause remanded for further proceedings."

In Reeves, supra, which involved a local option election in "wet" territory in Jefferson County, we said in part:

"If, by a change of precinct boundaries, territory with one local option status is placed in a precinct which has a different local option status, *it may well be that the change of boundaries should not be permitted to effect a change of the local option status of the territory so moved.* See Annotation, 25 A.L.R.2d 863. But in the instant case, all of the territory involved, in both the old and the new precincts, had the same local option status at the time of the change of boundaries. So here there is no question of an attempt to change a local option status or to nullify a local option election previously held or previously petitioned for, by a change of territorial boundaries."

An examination of encyclopedic texts (see 48 C.J.S. Intoxicating Liquors § 68, page 200 and 30 Am.Jur., Intoxicating Liquors, section 115, page 601 wherein general statements of judicial pronouncements regarding the issue in question are set forth) reveals that ordinarily the legal effect produced by a change in the boundaries in which a part has been previously voted "dry" under local option statutes, does not effect a repeal of a local option law in that part of the territory which was "dry" prior to the consolidation. This statement is supported by numerous decisions, among which are Blanchard v. Gauthier, 248 La. 1107, 184 So.2d 531; Hughes v. Parish Council, La.App., 48 So. 2d 823, 25 A.L.R.2d 852; Canton v. Imperial Bowling Lanes, Inc., 16 Ohio St.2d 47, 242 N.E.2d 566; Hawthorne v. Texas Liquor Control Board (Tex.Civ.App.), 113 S.W.2d 577; Amerker v. Taylor, 81 S.C. 163, 62 S.E. 7; Wilkins v. State, 75 Fla. 483, 78 So. 523.

In an annotation in 25 A.L.R.2d pp. 863–877, which follows a report of the Hughes case, supra, it is stated:

"Because the theory of local option laws is that the people of a political or governmental unit shall have the right to determine their status, and the correlative right to change it, according to the provisions of those laws, a status once adopted is usually considered to attach to the territory which was originally bound by the vote, and to remain operative, unless lawfully changed, notwithstanding changes for other purposes in the designation, boundaries, or organization of the unit."

Section 61 of the Kentucky Constitution, in pertinent part, states that:

"The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. * * *."

Pursuant to this constitutional mandate the Kentucky General Assembly enacted KRS, Chapter 242, ordinarily referred to as the Local Option Law, which provides the means whereby the sense of the people of any county, city, district or precinct may by taken as to whether spirituous, vinous, or malt liquors can be sold therein. This

Act sets forth election procedures and guidelines to be observed in holding a Local Option election. The obvious purpose of this Act is to permit the people living in the mentioned political subdivisions to determine for themselves whether the sale of alcoholic beverages should be permitted within that territory. A search of our statutes reveals the only method provided for the discontinuance of prohibition is found in KRS 242.200, which states that:

> "When a majority of the votes cast at an election are in favor of the discontinuance of prohibition in a territory, prohibition shall cease to be in force and effect at the expiration of sixty days from the date of the entry of the certificate of the county board of election commissioners in the order book of the county court."

It is hardly conceivable that our General Assembly would grant to the people of the various governmental subdivisions the right to create "dry" territory by their vote and at the same time vest in the legislative department of a city the right to nullify that vote by annexing the "dry" territory into a "wet" city.

We conclude that, when the people of any county, city, district or precinct have voted in favor of prohibition, a "dry" status has been created that attaches to the involved territory and that status is unalterable unless it is changed by a vote of the people as provided by KRS 242.200. We reach this conclusion because the method provided by KRS 242.200 is the exclusive method our Legislature has provided to change the status of a territory that has voted in favor of prohibition.

The judgment is affirmed.

MILLIKEN, OSBORNE, REED and NEIKIRK, JJ., concur.

Dissenting opinion by STEINFELD, J., in which HILL, C. J., and PALMORE, J., concur.

STEINFELD, Judge (dissenting).

After stating that the annexed territory assumes obligations voted prior to its annexation, the opinion continues that "The obvious purpose of this Act is to permit the people living in the mentioned political subdivisions to determine for themselves whether the sale of alcoholic beverages should be permitted within that territory." I agree, but the conclusion completely destroys (as a practical matter) the right of those in the annexed area ever to determine their fate.

The City of Richmond is "wet" except for the annexed territory. There is no procedure known to me for that new city territory to vote "wet". Absent a change in the statutes, forever it must remain "dry" even though all of its residents desire that it become uniform with the remainder of the city. All other "qualified voters" are given the right of self-determination. Uniformity and equality are required but do not exist here. Mannini v. McFarland, 294 Ky. 837, 172 S.W.2d 631 (1943).

HILL, C. J., and PALMORE, J., join in this dissent.