The Honorable Barry Hyde State Representative 208 North Beech St. North Little Rock, AR 72114-5906
Dear Representative Hyde:
I am writing in response to your request for an opinion on how a precinct's boundary change affects its prior local-option vote. You indicate that a North Little Rock precinct originally voted to prohibit the sale or manufacture of alcoholic beverages (a "dry" vote) under Arkansas's local-option rules. Since then, the precinct's boundaries have been "modified" such that the original boundaries of the dry territory no longer exist. With this background in mind, you ask three questions about how the dry area can be changed to permit the sale or manufacture of alcoholic beverages (a "wet" vote), which I will paraphrase as follows:
 1. After the original precinct's boundaries have been modified, what North Little Rock precinct may petition and vote on whether to shift to a wet precinct?
 2. Can the qualified electors of the existing precinct that encompasses the original dry precinct petition and vote on the local option election?
 3. If not, what would be the procedure to petition for a local option election and who would be the qualified electors of that precinct? *Page 2 
RESPONSE
As for your first question, while there are no Arkansas statutes or cases directly on point, several states have considered this issue. Along with a majority of those states, I believe an Arkansas court would hold that because the dry vote from the original precinct adhered to the original precinct's territory, the boundary change does not alter the dry vote and the dry territory remains dry. But a majority vote of the new precinct's qualified electors can move the entire new precinct to wet, including the dry territory. With respect to your second question, the answer is "yes," in my opinion. Given my answers to your first two questions, I believe your final question is moot.
Question 1: After the original precinct's boundaries were modified,what North Little Rock precinct may petition and vote on whether toshift to a wet precinct?
In my opinion, the newly defined precinct may use Arkansas's local-option laws to petition for (and hold an election on) moving the entire precinct to wet. Until that vote, however, the portion of the newly defined precinct that originally voted dry remains dry.[1]
Your question can be broken down into three subquestions. First, what happens to the original dry vote when a dry precinct (or other subdivision) has its boundaries changed? Second, if the dry vote is unaffected by the boundary change, who, if anyone, can alter the original dry vote? Third, if the original dry vote can be altered, how is that accomplished? As I mentioned above, Arkansas's appellate courts have not ruled on any of these three questions. Accordingly, my opinions are based on what most states have decided when confronted with these issues. My analysis will track with these three subquestions.
First, what happens to the original dry vote when a dry precinct (orother subdivision) has its boundaries changed? My predecessor considered this issue and opined that the original vote adheres to the territory in which the local-option election is held. Op. Att'y Gen. 2002-115.[2]
Nearly every state that has considered *Page 3 
this issue concurs and has held that a boundary change cannot break this bond.[3] The rationale for the original vote's durability is based on a concern that without the rule, officials charged with drawing boundary lines could shift boundaries to avoid local-option election results they disliked. Over 100 years ago, the Kentucky Supreme Court explained this concern:
 It surely could not have been contemplated that the county court [which was the entity charged with altering boundaries] could defeat the will of the people in a vote for or against the measure by changing the boundary of the territory in which the vote had been *Page 4 
taken in the creation of an additional voting precinct or magisterial district.
 * * * Such a ruling would enable the county court in every instance to defeat the popular will by a mere change of the district. The right to determine whether spirituous liquors should be sold within this boundary was taken from the county court by this local option law and vested within the voters in the boundary. They alone have the right to permit its sale by a subsequent vote, if prohibited in the first instance, and the county court has no power over it.
Prater v. Commonwealth, 11 Ky. Op. 578, 3 Ky. Law Rpts 695 (1882).
Second, because the dry vote attaches to the land and remainsunchanged after boundaries are redrawn, who, if anyone, can alter theoriginal vote? Again, nearly every state that has considered this issue holds that a majority of the qualified electors of the newly established precinct can alter the original vote by following the state's local-option laws. This general rule is sound because otherwise a political subdivision with long erased boundaries could never change the original vote. Because the members of the overall new subdivision could not touch the original vote, and the members of the original territory are not a proper voting-district unto themselves, [4] there would be no qualified voters. In my opinion, the inability to change the original vote might create significant administrative difficulties in maintaining and enforcing all the original boundaries. *Page 5 
These administrative difficulties might, in turn, discourage officials from redrawing boundaries when necessary.
Third, if the original dry vote can be altered, how is thataccomplished? The qualified electors of the new precinct can alter the original vote by following the local-option petition and election rules, which are codified at A.C.A. §§ 3-8-201 to-210 (1996 Supp. 2007) and A.C.A. §§ 3-8-301 to-317 (1996 Supp. 2007).
Question 2: Can the qualified electors of the existing precinct thatencompasses the original dry precinct petition and vote on the localoption election?
In my opinion, for the reasons explained in response to your first question, "yes."
Question 3: If not, what would be the procedure to petition for alocal option election and who would be the qualified electors of thatprecinct?
Given my answers to your first two questions, this question is moot.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL, Attorney General
[1] I will refer to the original vote as "dry" because that is the factual situation about which you asked. But this analysis applies equally to an original vote that was wet.
[2] My predecessor's opinion dealt with an entire subdivision beingannexed by another subdivision. But the reasoning in that opinion, as well as the cases in note 3, also apply to subdivisions that have joined another subdivision by redrawing boundaries such that only a portion of the original territory is moved into another subdivision (a "split" territory). When you say the boundaries of the original subdivision have been "modified," I am not sure whether you mean the original subdivision was annexed or split when its boundaries were redrawn. Nevertheless, the rationale — discouraging election officials from redrawing boundaries to avoid local-option election results they dislike — applies equally to split districts. See, e.g., Reeves v.Zirkle, 331 S.W.2d 723
(Ky.App. 1960) (holding that after a precinct was split, the entire new precinct may vote on the local-option status, which reaches the same result as with annexed territories); see generally 45 Am. Jur. 2d IntoxicatingLiquors § 86 (2008) ("Detachment of a part of a territory whose status has been determined in a local-option election does not affect the status of the remaining part, or original area."); H.D. Warren,Change of "wet" or "dry" status fixed by local option election by changeof name, character, or boundaries of voting unit, without laterelection, 25 A.L.R.2d 863, § 5 (1952) (citing additional cases).
[3] Illinois: See Palmer v. Liquor Control Commission, 396 N.E.2d 325
(Ill.App. 4th Dist. 1979) (holding that dry portions of township located outside city limits remained dry despite being later annexed by the city); Kentucky: Rich-Hills Catering Co. v. Slattery,448 S.W.2d 379, 383 (Ky. 1969) (holding that when people of any political subdivision vote dry, that status attaches to the territory and cannot be altered absent a vote provided by statute); Kan. Att'y Gen. Ops. 85-7, 81-126 ("the holder of a valid retail liquor license in that [annexed] township may continue operation and annually renew such license, notwithstanding annexation of the property by the [dry] City of Derby, until such time as the City of Derby, including the territory annexed, conducts an election at which the majority of the electors vote against licensing the sale of alcoholic liquors by the package.");Louisiana: Blanchard v. Gauthier, 184 So. 2d 531 (La. 1966) (holding a subdivision retains its original vote after annexation); but see KrogerCo. v. City of Baker, 434 So. 2d 586, 587-88 (La.App. 1st Cir. 1983) (noting that the general rule did not apply because of statute requiring subdivisions to adopt the wet or dry status of the area into which it was annexed); Ohio: Canton v. Imperial Bowling Lanes, Inc.,242 N.E.2d 566, 570 (Ohio 1968) ("It would then follow that the status as wet or dry of any part of that territory (which status had been acquired pursuant to a local option election) could only be changed by a subsequent local option election in a district including that part of that territory."); Texas: see Coker v. Texas Alcoholic BeverageCommission, 524 S.W.2d 570, 578-79 (Texas 1975) (holding that after boundaries were changed such that a dry territory was included in a wet territory, dry territory retained its status despite subsequent wet vote by entire new subdivision because Texas constitution so provided);Washington: Wash. Att'y Gen. Op. 1991 No. 31 ("when `wet' territory is annexed into a city that contains a `dry' local option election unit, it does not become `dry' by reason of the annexation"); see generally H.D. Warren, Change of "wet" or "dry" status fixed by local option electionby change of name, character, or boundaries of voting unit, withoutlater election, 25 A.L.R.2d 863 (1952) (citing additional cases); 48 C.J.S. Intoxicating Liquors § 90.
[4] This may not be the case if the limited provisions of A.C.A. § 3-8-502 (Supp. 2007) apply. The statute permits an annexed township to be its own voting groups if it meets all the following requirements in subsection 3-8-502(a)(1)(B):
 (B) An area qualifies to hold a local option election under this subchapter if:
 (i) The area has been annexed from a dry township into a wet contiguous and adjoining city or incorporated town;
 (ii) The annexed area is separated from the remainder of the dry township by a four-lane divided highway; and
 (iii) A nonbinding election was held between November 1, 2004, and January 1, 2005, in the annexed area on the issue of whether intoxicating liquors may be manufactured, sold, bartered, loaned, or given away within the annexed area. *Page 1